ST. LOUIS MALLEABLE CASTING COMPANY, Appellants, v. GEORGE C. PRENDERGAST CONSTRUCTION COMPANY.

Division One, June 6, 1921.

1. **SPECIAL TAX BILL:** Avoidance. A special tax bill, being prima-facie evidence of its validity, if not overturned by ample evidence of fraud, cannot be cancelled.

2. ———: **Sewer District: Notice of Establishment.** Under the old Charter of St. Louis, notice to the property owners of the establishment of a sewer district is not necessary to the validity of special tax bills issued to pay for the sewer.

3. ———: ———: **Judicial Review.** The action of the municipal authorities in the establishment of a sewer district, if in harmony with charter requirements, is, in the absence of fraud, not subject to review by the courts.

4. ———: ———: **Fraud.** A complaint of fraud in fixing the boundaries of a sewer district comes too late if first made after the work is completed.

5. ———: ———: **Estoppel.** Silent acquiescence with knowledge of the improvement being made, especially when accompanied by acceptance of its benefits, estops the property owner from denying the validity of a tax bill issued in payment for the construction of the sewer.

6. ———: ———: **Omitting Other Natural Drainage Areas.** The municipal authorities of St. Louis are the sole judges of the dimensions of a contemplated sewer district; and charges of a property owner, in his suit to cancel tax bills, that two large tracts of land in the same natural basin in which the sewer district was laid out were not included within its boundaries and that thereby the amount of the cost taxed •against his property

was disproportionately large and unjust and larger than it would have been if said tracts had been included, if the evidence shows that private sewers, connected with a public sewer and sufficient to drain them of foul and storm water, had been constructed thereon or are being constructed, will not support a finding that the municipal authorities were guilty of fraud in omitting such tracts, especially where there is no evidence connecting the defendant contractor with the alleged fraud.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor*, Judge.

AFFIRMED.

*Muench, Walther & Muench* for appellant.

(1) The charter of the City of St. Louis makes no provision for notice or hearing in the establishment of taxing districts for sewers, and no notice was given or hearing had upon the question of benefits in the establishment of the taxing district for Baden District Sewer No. 2. Therefore, the assessment is invalid, being violative of the due process clause of the Federal Constitution. Hamilton on Special Assessments, sec. 145; McQuillin on Municipal Corporations, sec. 2074; Page & Jones on Taxation by Assessment, sec. 729; Farnham on Water & Water Rights, sec. 232, p. 1091; Baumann v. Ross, 167 U. S. 549; Embres v. Road Dist., 240 U. S. 242, 257 Mo. 593; Land Co. v. Kansas City, 241 U. S. 419; Land & Stock Co. v. Miller, 170 Mo. 240; McGhee v. Walsh, 249 Mo. 284. (a) The hearing provided for by Section 3 of Article XXII of the charter relates to the character of the improvement and not to the defining of the taxing district. It takes place after the taxing district has been finally established by ordinance. Collier Est. v. Paving & Supply Co., 180 Mo. 390. (b) A local assessment may be made by the Legislature itself without notice or hearing, but when the power is delegated to a municipal body it cannot be exercised without notice to property owners and an opportunity to be heard at some stage of the proceeding.

McGehee on Due Process of Law, p. 248. (c) Even if it be conceded that a Legislature may delegate such power to a municipal legislative board, and that such board may exercise the power without notice and opportunity to be heard, yet the Board of Aldermen, in passing the ordinance establishing the taxing district in question, was not acting legislatively. State ex rel. v. Gates, 190 Mo. 540; McKenna v. St. Louis, 6 Mo. App. 320; Parks v. Boston, 8 Pick. (Mass.) 218; State v. Mayer, 34 N. J. L. 445; 2 McQuillin on Mun. Corp. sec. 704. Under the charter the Board of Public Service makes the inquiry into the facts and drafts a bill for the establishment of the taxing district, based upon its finding of facts, and recommends to the Board of Aldermen the adoption of the assessment. The Board of Public Service is a purely administrative board. Kansas City v. Ward, 134 Mo. 172. The Board of Aldermen is given no power under the charter to amend the bill and must either reject or pass it as it comes from the Board of Public Service. It cannot originate an ordinance of this character. American Tobacco Co. v. City, 247 Mo. 374; State ex rel. Belt v. St. Louis, 161 Mo. 371. The taxing district being in fact established by the Board of Public Service, the property owners must be given an opportunity to be heard. The charter making no provision for such hearing and none having been accorded, the ordinance in question is invalid. (d) When the scheme of distribution of an improvement tax is palpably arbitrary and constitutes a plain abuse, it is violative of the Fourteenth Amendment to the Federal Constitution. St. Louis Land Co. v. Kansas City, 241 U. S. 429. (2) Special taxation for local improvements rests on the principle of benefits. McQuillin on Municipal Corps., sec 2018; Construction Co. v. Haeussler, 201 Mo. 400; Gast Realty Co. v. Schneider Granite Co., 240 U. S. 58; Norwood v. Baker, 172 U. S. 269; Page & Jones on Taxation, secs. 549 and 651. (a) Taxes for local benefits should be distributed equally upon all standing in like relations. McQuillin on Municipal

Corps., sec. 2021, p. 4339; Gast Realty Co. v. Schneider, 240 U. S. 58; Hanscon v. Omaha, 11 Neb. 37; Masters v. Portland, 24 Ore. 161. (b) The omission to assess the property of the Calvary Cemetery and the "Kuhs" property, both of which are in the natural drainage area, invalidates the assessment. · 28 Cyc. 1162; Page & Jones on Taxation, sec. 556, p. 905, sec. 553, p. 897; Masters v. Portland, 24 Ore. 161; Scranton v. Levers, 9 Pa. Dist. 176; Clay v. Grand Rapids, 60 Mich. 451; Brewing Co. v. Trustees, 15 N. Y. App. Div. 139; Stover v. Springfield, 167 Mo. App. 328; Kansas City v. Bascom, 147 Mo. 301; Dyer v. Harrison, 63 Cal. 447; Helm v. Wirtz, 35 Ind. App. 131; Farnham on Water and Water Rights (1904 Ed.) sec. 172, p. 921. (3) The evidence establishes that the drain was made twenty per cent larger than the needs of the taxation district required, so as to take care of the surface water from Calvary Cemetery. There is no principle of taxation which justifies the throwing of the cost of this larger sewer upon the property in the district as defined by the ordinance, and the exclusion from the taxing district of the cemetery property for the benefit of which the size of the sewer was increased. Farnham on Water & Water Rights, sec. 173-d, p. 932; Harrisburg v. Cummings, 6 Pa. Dist. 437; Park Ave. Sewers, 169 Pa. St. 433; Bayden v. Village, 65 Vt. 504. (4) The agreement to exempt the Kuhs property, in consideration of the granting of the right-of-way for the district sewer and the altering of the Kuhs private sewer system, is invalid. So, also, is the arrangement between the Calvary Cemetery and the city for the exemption of the cemetery property. McQuillin on Municipal Corps., sec. 2063; 28 Cyc. 1134; St. Louis v. Meier, 77 Mo. 13; Bank v. Clark, 252 Mo. 20; Vrana v. St. Louis, 164 Mo. 146; St. Joseph v. Crowther, 142 Mo. 155; McKaine v. Independence, 175 Mo. App. 332; Rider v. Parker-Washington Co., 144 Mo. App. 677; Radkliffe v. Duncan, 130 Mo. App. 695; Brewing Co. v. Trustees, 15 N. Y. App. Div. 146. (5) The ordinance establishing the taxing district in

question is arbitrary and results in favoritism to the
owners of the properties within the natural drainage
area excluded and in oppression upon those whose prop-
erties lie within the taxing district. The courts will de-
clare such an unreasonable ordinance void. Dillon on
Municipal Corps. (5 Ed.) sec. 592, p. 920; McQuillin on
Municipal Corps., sec. 2052, p. 4401; Page & Jones on
Taxation, sec. 555; 28 Cyc. 1122; Corrigan v. Gage, 68
Mo. 541; City v. Hyde, 196 Mo. 498; Masters v. City of
Portland, 24 Ore. 161; Hanscon v. Omaha, 11 Neb. 44.
(6) The fact that Calvary Cemetery and the Kuhs prop-
erty had private drains is not sufficient to exempt said
property from assessment for the district sewer con-
structed by the city. Page & Jones, sec. 563, p. 920;
City of St. Joseph to use of Gibson v. Owen, 110 Mo. 445.
Calvary Cemetery and the Kuhs property are so located
that they may be served by the district sewer. They
are therefore benefited by the district sewer. Page &
Jones on Taxation, sec. 563, p. 917.


*Rodgers & Koerner* for respondent.

(1) The special tax bill is prima-facie evidence of
its validity; and the testimony in the case is not sufficient
to overturn it. (2) No notice, or hearing, was neces-
sary in the establishment of the taxing district for the
sewer. Meier v. St. Louis, 180 Mo. 409; Heman v. Allen,
156 Mo. 551; Heman v. Schulte, 166 Mo. 417; Embree v.
K. C. Road Dist., 240 U. S. 250; Work v. City of Lock-
port, 28 Hun. 9; 2 Page & Jones on Taxation by Assess-
ment, secs. 728, 743; Williams v. Eggleston, 170 U. S. 304.
The hearing had before the Board of Public Service up-
on due notice, gave full opportunity to property holders
to be heard as to, and complain of, any matter which
might make it inequitable to construct a sewer as pro-
jected in the district as established. (3) The action of
the municipal authorities in establishing the sewer dis-
trict, in the absence of fraud, is conclusive and not sub-
ject to review by the courts. Heman v. Allen, 156 Mo. 534;

McGhee v. Walsh, 249 Mo. 266. (a) There is no evidence of fraud in this case. On the contrary, there is an express disclaimer thereof. (b) Even had there been fraud, the contractor was no party to it, hence could not be prejudiced by it. A complaint of this sort comes too late after the work is done. Land & Imp. Co. v. St. Louis, 257 Mo. 291; Bank v. Woesten, 147 Mo. 467. (4) The municipal authorities of the City of St. Louis are sole judges of the dimensions of contemplated sewers. Heman v. Allen, 156 Mo. 534. (5) Silent acquiescence with knowledge of the improvement, especially when accompained by acceptance of its benefits, estops the property owner from denying validity of the tax bill. Paving Co. v. Flemming, 251 Mo. 210; Heman v. Ring, 85 Mo. App. 231; Walsh v. Bank, 139 Mo. App. 641; Smith v. Carlow, 114 Mich. 67; Fitzhugh v. Bay City, 109 Mich. 581; Atkinson v. Newton, 169 Mass. 240; Board of Commissioners v. Plotner, 149 Ind. 116; Patterson v. Baumer, 43 Iowa, 477; Wright v. Davidson, 181 U. S. 377.

WOODSON, J.—The plaintiff brought this suit in the Circuit Court of the City of St. Louis against the defendant to cancel and set aside a certain tax-bill issued against the property of the former for the construction of Baden Sewer District No. Two, amounting to $9,168.86. The trial resulted in a judgment for the defendant and the plaintiff duly appealed the cause to this court.

The petition charged substantially the following facts:

The petition of the plaintiff alleged that the Board of Aldermen of the City of St. Louis, upon the recommendation of the Board of Public Service of the city, adopted an ordinance, approved March 22, 1915, establishing a sewer district to be known as "Baden Sewer District No. Two", which ordinance is set out in full in the petition. That thereafter the Board of Aldermen enacted another ordinance, prepared and recommended by the Board of Public Service, for the construction of the sewer in said district, which ordinance was approved

July 21, 1915, and under which the Board of Public Service was authorized to let a contract for the construction work. The ordinance further proved for the acceptance by the City of St. Louis of sewers conveyed to the city by the St. Louis Terminal Railway Company by deeds, and that part of the sewer so conveyed should be incorporated in the system to be constructed under authority of the ordinance. The ordinance further provided that when the sewers were fully completed, the Board of Public Service should cause the entire cost and expense thereof to be computed and should levy and assess such cost and expense as a special tax, in accordance with the requirements of the charter of the city, and cause to be issued a special tax bill against each lot or parcel of ground liable, in the manner provided by the charter. That the defendant was awarded the contract for the construction of the sewer, and that on December 22, 1916, the City of St. Louis issued and delivered to the defendant special tax bills for the aggregate amount of $65,744.67, being the entire cost for the construction of said sewer, as calculated by the Board of Public Service and as agreed upon in the contract between the city and the defendant, amongst which bills was one issued against the property of plaintiff for $9,168.86. That plaintiff is the owner in fee of the tract of land described in said tax bill, against which said tax bill was issued, which tract contains approximately 320,210 square feet.

That the said assessment and charge in said tax bill is excessive, unlawful and void, for the reason that the said taxing district established by ordinance as aforesaid does not include large areas of land which were in the drainage area of said sewer, and which properties stand in the same relative position as plaintiff's with respect to the said sewer, and derive, and are so situated as to be capable of deriving, the same amount of benefit from said sewer as the property of plaintiff. That a large tract of land immediately north of plaintiff's property, hereinafter referred to as the "Kuhs" property

and containing approximately the same area as plaintiff's property, and which property is so situated with respect to the said sewer as to receive as great or greater benefit therefrom than the said property of plaintiff, was omitted from the said taxing district and exempted from taxation for any portion of the cost of the construction of said sewer. That a large tract of land fronting on the west side of Broadway and belonging to the Calvary Cemetery Association, and which property consists of a number of acres, and is in the natural drainage district of said sewer, which property is in the same relative position with respect to said sewer as the property of plaintiff, and derives as great benefit therefrom, was also omitted from said taxing district and exempted from the payment of any portion of the cost of said sewer. That by reason of the omission and exemption of the said large tracts of land from their just share of the said tax to pay the cost of construction of said sewer, an unreasonable and excessive proportion of the said tax has been assessed against the said property of plaintiff.

That the ordinances aforesaid, the provisions of the charter of the City of St. Louis purporting to authorize the Board of Aldermen to establish a sewer district designating lands of private owners to be specially taxed to pay the entire cost of said sewer, violate the Fourteenth Article of the Amendments to the Constitution of the United States, in that they determine that said lands within the district prescribed by said ordinances would be benefited by said sewer and should be and were especially assessed therefor, as well as the apportionment of said taxes between the several lots or parcels of land and their respective owners within said district, without any hearing being accorded to the owners of said lands upon such determination, thereby denying plaintiff due process of law; that by the establishment of said sewer district and the imposition of said entire cost of the said district sewer upon the property therein, as or-

dained by the ordinance aforesaid, and by the exclusion of the land as aforesaid from the taxation of the cost of said sewer, although such lands so excluded will be drained by said sewer and share equally with the property of plaintiff and other properties in said defined district in the benefits resulting from the construction of the sewer, plaintiff has been denied due process of law, the equal protection of the law guaranteed to plaintiff by the said Fourteenth Article of the Amendments to the Constitution of the United States.

That the establishment of said sewer district and the levying of said tax by the ordinance aforesaid was and is arbitrary, unjust, oppressive and fraudulent, and by the said Board of Public Service known to be so at the time of its recommendation of said ordinance to said Board of Aldermen, and that the said Board of Public Service then knew that the aforesaid additional parcels of land would be drained by the said sewer and derive all of the benefits and advantages therefrom, which every other property within the said defined sewer district can or will derive therefrom, and notwithstanding which the ordinances so recommended by the said Board of Public Service to said Board of Aldermen and by the latter enacted, imposed the whole cost of said sewer upon the lots within the said sewer district as defined by the said ordinance, and no part of said cost upon such additional lands. That the said Board of Public Service in recommending to the Board of Aldermen the said ordinance establishing the said district acted oppressively, arbitrarily and fraudulently in this: That prior to the establishment of the said sewer district, for the construction of said district sewer, plaintiff had, under permit of the then Board of Public Improvements of said city, the predecessor of said Board of Public Service, constructed a sewer system upon its said land, which private system was laid upon plaintiff's said property, along a private right-of-way, to a public sewer known as "Baden Public Sewer," with which sewer said private sewer of plain-

tiff was connected. That plaintiff had constructed the said sewer under permit as aforesaid at great cost and expense, and said sewer was adequate for taking care of the sewage and surface water from plaintiff's said land. That plaintiff's said property has no dwelling buildings upon it, the only buildings erected upon its said land being foundry, factory and office buildings occupied and used by it for the transaction of its business. That the tract of land hereinabove mentioned as the "Kuhs" property, and which has been excluded from said taxing district as aforesaid, is and has been improved for a number of years by a large number of tenement and flat buildings occupied by more than forty families. That prior to the establishment of said taxing district for the construction of said district sewer, a short line of private sewer, for carrying off foul water, had been laid in said "Kuhs" property and was connected with plaintiff's private sewer above mentioned, and the sewage from said "Kuhs" property thus drained through said private sewer into said Baden Public Sewer. That in the planning of said district sewer it was provided for the laying of a line of said sewer along and upon a strip seven and one-half feet in width, being the western seven and one-half feet of said "Kuhs" property, extending southwardly from the south line of Christian Avenue, and it was further provided in said plan for the laying of a line of said district sewer upon and along a strip being the western ten feet in width of plaintiff's property hereinabove described and extending southwardly from the south line of Antelope Street to the north line of Thatcher Avenue, a distance of four hundred and ninety-five feet, more or less. That the City of St. Louis obtained from the plaintiff, without any consideration moving to plaintiff therefor, a deed conveying the easement of right-of-way for said district sewer along and upon the said strip ten feet in width. That said city also obtained a conveyance from the owners of the said "Kuhs" property, for the easement or right-of-way for said district

sewer in said strip seven and one-half feet in width. That the deeds for the said sewer right-of-way recite a nominal consideration of one dollar. That notwithstanding the deed to the sewer right-of-way along said "Kuhs" property purported to be a conveyance in consideration of one dollar, the Sewer Commissioner of the City of St. Louis, who is also a member of the Board of Public Service did, without authority and unlawfully, promise the owners of said "Kuhs" property that because of the making of said deed to said right-of-way the taxing district for the said Baden District Sewer No. Two should be so laid out and said district so constructed that said "Kuhs" property, although receiving all of the benefits from said district sewer and being with respect to said sewer precisely in the same position as plaintiff's property, should be left out of said taxing district and exempted from the payment of any portion of the cost for the construction of said sewer. That the value of the sewer right-of-way upon said strip of the "Kuhs" property was trifling as compared with the proportion of the cost of said sewer properly and equitably taxable against said property. That the said Sewer Commissioner, in planning and laying out the taxing district for said district sewer, acted arbitrarily with a view of favoring the owners of the said "Kuhs" property and did so plan said district as to leave out of said taxing district all of the said "Kuhs" property except a strip being the western seven feet and six inches in width and a strip fifty feet in width off the eastern part of said land, extending from the center line of Baden Public Sewer to the southern boundary line of said "Kuhs" property. That the said two strips of said "Kuhs" property were left in the taxing district for the fraudulent purpose of permitting the connection of said "Kuhs" property with said district sewer, owing to the fact that the said strips are immediately adjacent to the pipes of said district sewer, thus making it possible for the remainder of said "Kuhs" tract, eliminated from said taxing district as

aforesaid, to obtain all the benefits and advantages of said district sewer. That the said Sewer Commissioner did report to the said Board of Public Improvements and to the committee of said board having under consideration the establishment of said district, his said unlawful arrangement with the owners of said ''Kuhs'' property, to so define said district as to eliminate substantially all of said ''Kuhs'' property, and did fully inform the other members of said board, and of the said committee of said board, that the said proposed elimination of said property from the taxing district was probably unlawful and might invalidate the tax bills issued for the construction of said sewer. That notwithstanding the said report of said Sewer Commissioner, and notwithstanding the members of said Board of Public Improvements did fully understand that the plan for said taxing district as submitted by the Sewer Commissioner was unjust, inequitable and invalid, the said Board of Public Improvements, as a committee of the whole, did arbitrarily, fraudulently and oppressively, and in a spirit of favoritism towards the owners of said ''Kuhs'' property, recommend the establishment of said taxing district with the elimination of substantially all of said·''Kuhs'' property as aforesaid, and the said Board of Public Improvements did then, at the regular meeting of said board, adopt the recommendation of the committee of the whole of said board, and did prepare and recommend to the Board of Aldermen of the said City of St. Louis, the ordinance establishing said taxing district, arbitrarily and fraudulently leaving out of the taxing district as defined in the ordinance so recommended to the Board of Aldermen the said ''Kuhs'' property, with the exception of the two small strips hereinbefore specified. That the Board of Aldermen of said City of St. Louis did, without any hearing being accorded the property owners in said proposed taxing district, and without any independent investigation of the facts, but acting solely upon the recommendation of said Board of Public Service as

hereinbefore set forth, enact the said ordinances as aforesaid.

Similar allegations were made regarding another tract of land, to-wit: the Calvary Cemetery Association, containing twenty-three acres, and similarly situated. The petition further charged that plaintiff's property is improved by its office and foundry buildings, and the Kuhs property is improved with a number of two-story brick flat and residence buildings, housing approximately 100 families.

In 1903 plaintiff obtained from Kuhs a deed for a sewer right-of-way along the eastern part of the Kuhs tract, extending from the northeast corner of plaintiff's property to Gingrass Creek. Plaintiff, at about the same time, under permit from the City of St. Louis, constructed a private twelve-inch sewer running from its property over the right-of-way acquired from Kuhs. This sewer emptied into Gingrass Creek. Subsequently, in 1907, under permit from the city, plaintiff replaced the twelve-inch sewer by a twenty-four-inch sewer. This private sewer not only carried off the foul water, but also the surface water, from plaintiff's premises, and the evidence is undisputed that this private system of plaintiff was and would continue to be entirely adequate for the plaintiff's property.

The Kuhs property also has a private sewer system. Under permit from the city there was laid along the eastern part of the Kuhs property a fifteen-inch sewer paralleling the plaintiff's sewer. The records of the sewer departemnt do not show that a permit was ever granted to Kuhs to lay any other private pipe.

Several years before the district sewer in question was built, a public or main sewer, known as Baden Public Sewer, was constructed in the bed of Gingrass Creek. The plaintiff's twenty-four-inch pipe and the fifteen-inch Kuhs pipe were both connected with the pubilc sewer, and both of these private sewers are still in use. Mr. E. L. Kuhs, for defendant, testified that
288 Mo.—14

there were two other pipes upon the Kuhs property, which also formerly emptied into Gingrass Creek, and are not connected with Baden Public Sewer, but the records of the Sewer Department do not show those connections.

Under the Charter of the City of St. Louis, Article XXII, Section 3, before the Board of Public Service shall recommend an ordinance for the construction of a sewer to be paid by special assessments, the Board of Aldermen, on recommendation of the Board of Public Service, shall establish or shall have established a sewer district, or joint-sewer district, against the property in which it is proposed to assess benefits. The charter establishes an arbitrary rule for the assessment of all property within the district so established, according to area. The Board of Aldermen has no power under the charter to amend such an ordinance emanating from the Board of Public Service, but must either adopt the ordinance as recommended, or reject it. The charter makes no provision for notice to the property owners nor for a hearing before the Board of Public Service or the Board of Aldermen upon the question of benefits; that is, upon the question of what property shall be included within the benefit district, and there was not, according to the testimony, any such notice or hearing in the matter of the establishing of the taxing district for Baden District Sewer No. Two.

The matter of the establishment of this taxing district was pending before the Board of Public Improvements for a considerable period of time before the bill defining the district was recommended by the board to the Board of Aldermen. According to the testimony, the matter was up for consideration before the Board of Public Improvements, sitting as a committee of the whole, on November 18, 1913. According to the stenographer's transcript of the proceedings before the board on that date, Mr. J. L. Hornsby, as attorney for the Calvary Cemetery, appeared and presented a request that the property of the Cemetery Association be excluded from

the taxing district and thus exempted from contributing anything to the cost of the sewer.

Mr. Hornsby stated to the board that Mr. Moreno, then Sewer Commissioner, had told him that twenty-three acres of the cemetery property sloped towards Broadway and that the surface water would necessarily drain into the proposed sewer; and that Mr. Moreno estimated that the Cemetery Association's share of the cost of the proposed district sewer would be about $12,000. In the discussion before the board on that occasion, Mr. Moreno said: "I understand the attitude of Mr. Hornsby, and I think it is not unreasonable; at the same time we have to consider this; if we cut out that twenty-two acres and assess the entire cost of those sewers against this district that is populated, some of the property owners may contest the tax bills, as it is evident that the sewers do have to be made twenty per cent larger than they otherwise would have to be built, to take care of that property outside of the district, and I am afraid we might not be able to get a contractor to bid on the work."

And again, in the course of the same discussion, in answer to a question of one of the other commissioners as to whether there had ever been a case of exemption of that sort, Mr. Moreno replied: "I don't recall any since I have been here. We try to lay the districts out so they will be on a basis perfectly fair to all the property owners within the district, and for that reason we could not very well exclude territory of this kind."

Mr. Kinsey, the president of the board, expressed a similar view. He said: "The statement of the Sewer Commissioner, in case your cemetery was exempt, that is to say, in such an event, if the district was so laid out as to exclude the cemetery, the city would have to pay the portion ordinarily assessed against the cemetery, and in that way, in imposing upon the property owners in the district that additional burden, it makes it difficult to exclude this cemetery in the present case."

Mr. Moreno thereupon suggested: "The only thing I see we can do is to move the line over arbitrarily a

portion of the distance, if the board thought that could be done. Still, that is establishing a precedent that might get us into trouble later." To which Mr. Talbert, another commissioner, replied: "It seems to me you would have to follow the physical fact or lay yourselves open to future trouble."

The question of the elimination of the Kuhs property from the taxing district came before the board sitting as a committee of the whole, at a meeting held February 6, 1914. At this meeting Mr. Moreno, Sewer Commissioner, called attention to the fact that the Kuhs property had been left out of the plan for the district submitted by him. He stated in explanation that the property was not subdivided and was drained by two private sewers connecting with the public sewer. Then he continued: "Another thing: in order to properly drain the district we are compelled to have a right-of-way, from Kuhs's property in which to lay some of our sewers. He gave that right-of-way with the understanding that if we accepted it and laid out the district his property would be left out, on the ground that he had started it and it did not drain through any of the district sewers. If we decide to put his property in the district, we will have to give him back his right-of-way and enter condemnation proceedings to acquire it. In order that these people may have relief we have to go ahead with the district and include this property in Calvary Cemetery, regardless of their protests, and it is an open question as to whether or not we should leave this other out or put it in. . . . It occurs to me that if we do leave this property out some of these other gentlemen who own vacant property might contest the tax bills."

On May 8, 1914, the question of the elimination of Calvary Cemetery and the Kuhs property again came up for consideration by the board. Mr. Hooke, who had succeeded Mr. Moreno as Sewer Commissioner, brought up the matter. He reported that something like twenty-three acres in Calvary Cemetery drained through the

territory, and that he had estimated that the cemetery should pay something like $12,000 as its proportion of the cost of the sewer. He recommended that if the Cemetery Association could take care of its own drainage he thought it would be fair to leave them out of the district, and that then the size of the district sewer could be cut. He also estimated that the private drain which the Cemetery Association would have to construct would probably cost $4,500. As to the Kuhs property, being asked by Commissioner Wall as to what he had done regarding that, he answered: "Nothing, for two reasons; the first is he gave us all of those rights-of-way (I was sitting in there with the Sewer Commissioner myself) on conditions that his sewers that were in there would be accepted, and if his sewers are accepted, there is no reason why we should put him in the district. . . . I do not see anything wrong with it, especially in view of the fact if we don't do that we must pass an ordinance and give him back those rights-of-way which were obtained under a misrepresentation."

The records of the board do not show that there was any further discussion of the matter by the board. The only subsequent record entry in connection with the establishment of the sewer district is the entry of November 17, 1914, in the proceedings of the board that an ordinance establishing the taxing district was recommended to the Board of Aldermen.

Prior to the time when the question of the extent of the taxing district was brought by the Sewer Commissioner before the board sitting as a committee of the whole, the Sewer Commissioner had obtained a deed to a right-of-way seven and one-half feet wide and approximately 247 feet in length off the western side of the Kuhs property. The deed is dated May 9, 1913, and recites a nominal consideration of one dollar. This is the right-of-way deed referred to by the Sewer Commissioner in the discussion of the question of the exclusion of the Kuhs property from the sewer taxing

district. The testimony shows that no money considera-tion moved from the city to the Kuhs Realty Company for this easement.

The plaintiff had also given the city a right-of-way for this district sewer, of a width of ten feet, and along the entire western line of its property, a distance of 495 feet. There was no actual consideration of whatever kind for this conveyance. The deed was made about the same time as the Kuhs deed.

The ordinance for the establishment of the dis-trict, as recommended by the Board of Public Service, was passed by the Board of Aldermen, the ordinance be-ing approved by the Mayor on March 22, 1915. The district laid out by the ordinance does not include any part of Calvary Cemetery and excludes all of the Kuhs property except a strip of seven and one-half feet in width off the entire west line, and a strip fifty feet in width off the east side extending from the southern boundary line of the Kuhs property to the public sewer, a distance of approximately 230 feet; 247.04 feet of the strip seven feet and six inches wide embraces the sewer right-of-way deeded by the Kuhs Company to the city, but the remainder of the seven and one-half-foot strip included in the district, and having a length of approx-imately 215 feet, although not given for or used as a right-of-way for the district sewer, is yet included in the district.

According to the testimony of Mr. Dodds, engineer and surveyor, a witness for the plaintiff, the area of Calvary Cemetery within the natural drainage district is twenty-three and a fraction acres, and the area of the Kuhs property within the natural drainage area and not included in the taxing district is 317,398 square feet. As shown by the plat of the taxing district, and as testi-fied to by Mr. Osthaus, the Special Tax Assessor, the total area of the district as laid out is 2,296,039 square feet. Adding that to the area of the portion of Calvary Cemetery and the area of the Kuhs property, within

the natural drainage district, 3,634,919 square feet, so that only 63.17 per cent of the area of the natural drainage district has been included in the taxing district.

The size of the district sewer is greater than is necessary for the draining of the area taxed. This was testified to by Mr. Dodds, witness for the plaintiff, who stated that the sewers in the district were larger than it is customary to build sewers for the draining of territory of the extent included in the taxing district and similarly situated with respect to the fall of the land. It is true that Mr. Horner, the City Engineer, testified that the sewers in the district were no larger than were reasonably necessary for the needs of the territory included in the taxing district, but he admitted on cross-examination that in calculating the sizes of the sewers the highest percentages of the various factors entering into the calculation were used. He further admitted upon cross-examination that the plans for the construction of the sewers, including the sizes of the pipes, had been prepared before the discussion as to the size of the taxing district by the Board of Public Improvement, and that no change in the sizes of the sewers in the district was made after the board determined to exclude Calvary Cemetery and the Kuhs property. In this connection we call attention to the statement of Mr. Moreno at the meeting of the board held on November 18, 1913: "It is evident that the sewers do have to be made 20 per cent larger than they otherwise would have to be built to take care of that property outside of the district." The plans, according to Mr. Horner, were not changed after that meeting, and it is evident that the sewers, as constructed, are therefore 20 per cent larger than the requirements of the territory taxed called for.

Mr. Hornsby, attorney for the Calvary Cemetery, and who testified in behalf of defendant, stated that the cemetery property had been left out of the taxing district by the Board of Public Improvements in consideration of the agreement of the Cemetery Association to

construct a drain along the Broadway front of the cemetery property of sufficient size to take care of the surface water from that portion of the cemetery within the natural drainage area of the district, the private drain to be connected with Baden Public Sewer. The drain along Broadway, from Calvary Avenue to the center gate of the cemetery, was to be an open concrete ditch, and from there northwardly an underground pipe. It was Mr. Hornsby's recollection that this arrangement between the Cemetery Association and the city officials was evidenced by letters.

Notwithstanding the contract between the Cemetery Association and the city, the Cemetery Association did not begin the construction of its private drain until October, 1916, at which time the district sewer was practically completed, and did not finish the construction of the private sewer until March, 1917.

Mr. Horner, City Engineer, who testified in behalf of defendant, stated that the chief consideration for the leaving out of the Kuhs property was the fact that it had a private system, which, with proper inlets, would be sufficient to take care of both the foul and surface water of the Kuhs land. The testimony of Mr. Hooke, Sewer Commissioner, was to the same effect. Mr. Horner admitted that the inlets which the Sewer Commissioner directed should be made for the purpose of taking care of the surface water of the Kuhs property, as a condition to the accepting of the private system as a part of the sewer system of the city, have not yet been made. Mr. Kuhs, also a witness for the defendant, likewise admitted that fact, but stated that he was making preparations for having the inlets constructed. Both Mr. Moreno and Mr. Hooke stated that they had no independent recollection of the negotiations with Mr. Kuhs, and therefore could neither confirm nor deny the correctness of their representations to the Board of Public Improvements at the meetings held on February 6th and May 8th, 1914, that the deed for the right-of-way

for the district sewer from the Kuhs Realty Company had been given on condition that the Kuhs property would not be included in the taxing district, and that if the Kuhs property were included in the taxing district the right-of-way deed would have to be returned and condemnation proceedings instituted.

None of the members of the Board of Public Improvements who testified, nor Mr. Horner, the Chief Engineer, could give any satisfactory explanation of why the Kuhs property was left out of the taxing district while the property of the plaintiff, which admittedly had an adequate private system, which is still draining directly into the Baden Public Sewer, was included. It was suggested by one of these witnesses for defendant that there was some difference between the two parcels of land, in that the Kuhs property immediately adjoined the public sewer, but when it was pointed out to this witness that the plaintiff had a right-of-way extending from its property to the public sewer, which right-of-way had been deeded to it by Kuhs and that therefore plaintiff's property, to that extent, also abutted upon the public sewer, it was admitted that this was no substantial ground for differentiating between the two properties in the matter of the taxation for the building of the district sewer. In this connection attention is called to the fact that the plaintiff's private sewer system, built under permits from the city, cost, according to the evidence, in excess of $4,500.

The court took the case under advisement and on December 30, 1918, at the December Term, 1918, entered a finding and judgment for defendant and dismissed plaintiff's bill.

The defendant's evidence tended to show:

The sewer, for proportionate part of cost of which appellant's ground was assessed, had been fully completed when this suit was brought, and appellant had connected its said premises with this sewer and was in actual enjoyment of the benefits theory. The evi-

dence fails to show any act of commission or omission on the part of the contractor. The appellant does not question the utility of the sewer. Yet, without offering to pay any part of its cost, appellant comes into a court of equity and asks that the entire assessment against its property be canceled.

The Charter of the City of St. Louis required the establishment by ordinance, on recommendation of the Board of Public Service, of a taxing district preliminary to the adoption of an ordinance providing for construction of sewers within the district, and also required a public hearing, on notice, as a condition precedent to such recommendation. Prior to tentatively laying out this sewer district, members of the Board of Public Service visited the locality in person and went over the ground. In addition to this, this Board had before it information of the local conditions gathered by its assistants, and, as one of the members exressed it in his testimony, was mindful of its duty to include in the assessment district all the property that would be benefited by the sewer.

The testimony shows that two tracts of ground within the same natural basin in which this district sewer was laid, were omitted from this sewer district.

One of these tracts, about 23 acres, is a portion of Calvary Cemetery. A representative of the Cemetery Association appeared before the Board of Public Improvements, then existing under the old charter of the City of St. Louis, and being the predecessor of the Board of Public Service, at a discussion of the then proposed sewer and taxing district therefor, and suggested that since the cemetery had no foul water to drain, it might with propriety be left out of the district. At this meeting some talk was had about the cemetery constructing open drains that would carry the storm water from its ground into a near-by public sewer. The cemetery property was omitted from the sewer district; and afterwards the said proposed open drains were constructed by the Cemetery

Association entirely at its own expense, with the result that nothing from the cemetery enters the district sewer.

The other of said two tracts omitted from the district was a portion of the "Kuhs" property, as it is called throughout the case, improved with dwelling houses accommodating about 100 families, and all of which was perfectly drained by a private sewer emptying into an adjoining public sewer.

Appellant's ground, all within the present sewer district and less in area than either of the portions of the cemetery or "Kuhs" tracts omitted from the district, was at the time of fixing the sewer district occupied as a manufacturing plant, consisting of foundry, warehouse and office buildings. It had a private sewer system connecting with the public sewer some distance away from it; but appellant was one of the petitioners for this district sewer, and as soon as possible connected its plant with it for purposes of additional drainage.

The Cemetery Association, Kuhs, and appellant all had at times prior to the fixing of the present sewer district given the city rights-of-way for sewer purposes.

The members of the Board of Public Service, which recommended the present district, testifying in this case, all denied any bargain whereby portions of the cemetery or Kuhs properties were to be, or were, omitted from this taxing district. And the following facts were also established by such testimony, viz:

In the judgment of the Board of Public Service, the portions of the cemetery and Kuhs properties omitted from such district were both adequately drained at private expense into the public sewer and were not benefitted by the district sewer; and appellant's property was not adequately drained by its private sewer system connected with the public sewer and was benefitted by the district sewer, which it immediately made use of.

That the dimensions of district sewer were not originally designed to drain any portion of the cemetery or Kuhs properties, and that the district sewer as de-

signed and laid was exactly adapted to the present district, according to the best expert opinion on the subject.

After the evidence was all in and the cause was under advisement, the defendant (respondent here) petitioned the court for leave to amend its answer. The answer, as it stood, was a general denial, and defendant sought to amend by adding thereto a plea of estoppel, based on allegations to conform to the evidence, to the effect that the plaintiff (appellant here), prior to the letting of the contract, knew that the City of St. Louis was about to let a contract for construction of the sewer in question and was familiar with the beginning and progress of the work of constructing said sewer, and knew that its (appellant's) said ground would be thereby benefitted and assessed therefor, and knew the extent of such assessment, and applied for permission to, and did, connect its premises therewith, but gave no notice that it would contest payment of its special tax bill, and silently stood by and permitted the work to be done and received the benefits thereof; and that plaintiff, by petitioning for said sewer, encouraged the city to form said sewer district and caused sewers to be constructed therein.

The trial court found in favor of defendant, without ruling on its said petition for leave to amend its answer.

I.   The plaintiff makes a very plausible case by the allegations of its petition, but it is not supported by either the evidence in the case or finding of the trial court. The tax bill sued on was prima-facie evidence of its validity; and the testimony in the case was ample to support its validity, and not tending to overturn it.

**Prima-Facie Case.**

II.   It is insisted that the establishment of the taxing sewer district is a nullity because no notice was given of that fact to the property owners. No such notice was necessary, as decided by this court and the Supreme

Court of the United States. Speaking upon that point this court in the case of Meier v. St. Louis, 180 Mo. 391, 1. c. 409, used this language:

"As to the contention that the special assessments amount to a taking of plaintiff's property without due process of law, it may be said that no notice is required by the Constitution to be given property-owners respecting those matters which the Legislature itself determines, or delegates to the municipal authorities. [Spencer v. Merchant, 125 U. S. 345; Williams v. Eggleston, 170 U. S. 304; St. Louis v. Rankin, 96 Mo. 497.] Publication of notice to the property-owners, and opportunity to be heard before the tribunal upon which is devolved the duty of ascertaining facts and acting therein in the special assessment procedure, satisfies the constitutional requirement, and is due process of law as to those matters to be passed upon by such tribunal.

"We think Section 14 of Article 6 of the amended charter of St. Louis complies with this requirement.

"When the taxing district has been fixed by valid legislation and when the apportionment of the cost of the improvement upon the property in the district has been so fixed, the owner of the property in the district cannot be heard to contend in the court that his property was not in fact benefited, or to the amount assessed in accordance with such apportionment. [Prior v. Construction Co., 170 Mo. 439.]

"The charter of St. Louis adopted by a vote of its people in obedience to an express grant by the Constitution of the State, has, with respect to municipal matters, including special assessments for local improvements, all the force and effect of an act of the Legislature. [City of St. Louis v. Fischer, 167 Mo. 654; Prior v. Construction Co., 170 Mo. 439; St. Louis v. Gleason, 15 Mo. App. 25; Ibid v. Ibid, 93 Mo. 33; Kansas City v. Oil Co., 140 Mo. 468.]"

To the same effect are the following cases: Heman v. Allen, 156 Mo. 534, 1. c. 551; Heman v. Schulte, 166

Mo. 409, l. c. 417; Embree v. K. C. Road District, 240 U. S. 242, l. c. 250.

Moreover the interested parties were given due notice of the meeting of the Board of Public Service, where all were given full opportunity to be heard as to, and complain of, any matter which might make it in equitable to construct the sewer as projected in the district established.

III. ·This court has repeatedly held that the action of the municipal authorities in the establishment of a sewer district in the absence of fraud, is conclusive and not subject to review by the courts. [Heman v. Allen, 156 Mo. 534; McGhee v. Walsh, 249 Mo. 266.]

*Judicial Review.*

IV. This record contains no evidence whatever of fraud, much less any evidence connecting the contractor with fraud. A complaint of fraud comes too late after the work is completed. [Land & Impr. Co. v. St. Louis, 257 Mo. 291; Bank v. Woesten, 147 Mo. 467.]

*Fraud.*

And we have also held that the municipal authorities of the City of St. Louis are the ·sole judges of the dimensions of contemplated sewers. [Heman v. Allen, 156 Mo. 534.]

V. Silent acquiescence with knowledge of the improvement, especially when accompanied by acceptance of its benefits, estops the property owner from denying validity of the tax bill. [Paving Co. v. Fleming, 251 Mo. 210; Heman v. Ring, 85 Mo. App. 231;. Walsh v. Bank, 139 Mo. App. 641; Smith v. Carlow, 114 Mich. 67; Fitzhugh v. Bay City, 109 Mich. 581; Atkinson v. Newton, 169 Mass. 240; Board of Commissioners v. Plotner, 149 Ind. 116; Patterson v. Baumer, 43 Iowa, 477; Wight v. Davidson, 181 U. S. 371, l. c. 377; Gibson v. Owens, 115 Mo. 258.]

*Acquiescence.*

Counsel present other questions for determination, but those we have decided fully dispose of the case, and

therefore it is not necessary to notice the remaining points made.

Finding no error in the record, the judgment is affirmed. All concur.