BADGER LUMBER COMPANY et al., Appellants, v. W. C. MULLINS et al.

In Banc, October 7, 1925.

1. **SEWER CONTRACT: Specifications: Information to Bidders: By Reference.** The plans and accompanying specifications for the construction of a reinforced monolithic concrete sewer should contain sufficient data and information upon their face to enable bidders to make intelligent bids upon such type of construction; and where upon the exhibits furnished prospective bidders there appeared the note: "If contract is let for reinforced monolithic concrete sewer, supplementary plans will be furnished," that note, by reference, brought in, as a part the exhibits furnished, the detailed plans and specifications for such reinforced monolithic concrete sewer set forth on another exhibit which was the plan of a

standard section of reinforced monolithic concrete sewer, and was on file with the city engineer and was accessible to prospective bidders and the public upon application, and thereby bidders were furnished the information necessary to bid intelligently. And particularly so, where the ordinance provided that, before advertising for bids, the board "shall cause to be made out by the city engineer detailed plans and specifications for the work to be done, and keep the same on file in his office for the information of all desiring to bid on the work," and the detailed plan was set forth in the exhibit on file in the office of the city engineer, and it was the only plan for such character of construction that had been on file in his office for the preceding six years, and all sewers of the size and material built during that time were built in accordance with it, and there is no pretense that any contractor was deterred from bidding because of any uncertainty in the plans or the size of the sewers or the material to be used.

2. ———: Destruction of Existing Sewers. The facts that there was a sufficient sanitary sewer already in existence and that parts of it had to be destroyed in the construction of a much larger joint district storm-and-sanitary sewer are not of themselves sufficient to defeat a public improvement deemed necessary by the board of public works and the city council, nor to invalidate a contract for the construction of such joint district sewer, nor to invalidate the special tax bills issued against property within the district to pay for such construction.

3. ———: ———: ———: Notice to Property Owners. Property owners have the notice which the city charter requires, when the resolution, stating the nature of the improvement and the manner in which it is to be paid for in case it is to be paid for in special tax bills and the time and place of a hearing and the substance of the resolution without entering into details of construction, is published in the manner prescribed by law.

4. ———: Irregularities: Cured by City Council. Whether or not the passage of an ordinance approving a contract for a public improvement cures errors and irregularities on the part of the city preceding the enactment of the confirmation ordinance, will not be decided, where no errors or irregularities impairing the validity of the tax bills the court is asked to cancel have occurred.

5. SEWER: Reclamation Project: Insufficient Pleading. Allegations that the tax bills are illegal and void for the reason that a short time before the construction of the sewer a section of another sewer had been constructed along the same route and in the same locality, and for the reason that the sewer for which the tax bills were issued was caused to be constructed by the city at the re-

quest of certain parties, two or three in number, for their sole convenience and benefit in the development of a tract of ground constituting only a small portion of the property against which the tax bills in question were assessed, do not raise the issue that the tax bills are invalid because the building of the joint sewer in the bed of a natural stream or watercourse was a reclamation project and the charter requires the benefits of such an improvement to be assessed against the abutting property owners.

6. ———: ———: **Definition.** Reclamation is the rescue or recovery of something lost, and development implies improvement and making better.

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 580, p. 689, n. 41; 4 C. J., Section 2541, p. 649, n. 36. **Evidence,** 23 C. J., Section 1992, p. 165, n. 56. **Municipal Corporations,** 28 Cyc., p. 943, n. 35; p. 982, n. 63; p. 1012, n. 15; p. 1027, n. 65. **Reclamation,** 34 Cyc., p. 534, n. 18.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield,* Judge.

AFFIRMED.

*Joseph G. Taggart, Grover, Tipton & Graves, W. F. Allen* and *Proctor & Phillips* for appellants.

(1)   Plaintiffs' Exhibits 6, 7 and 8, being the original tracings from which duplicates were furnished to nine prospective bidders, did not contain detailed plans and specifications for the reinforced concrete type of sewer, nor did they contain sufficient data and information on their face to enable a bidder to make a bid for the construction of the reinforced concrete type of sewer. Sec. 3, Art. 8, Charter of Kansas City; Section 612, Revised Ordinances of Kansas City; Albers v. Paving Co., 196 Mo. App. 273; Waddell v. Hall, 255 Mo. 685; McCoy v. Randall, 222 Mo. 36; Independence v. Knoeper, 134 Mo. App. 604; McCormick v. Moore, 134 Mo. App. 669; Mullins v. Everett, 172 Mo. App. 186. (2)   The pretended contract with the W. C. Mullins Construction Company was void because the law imperatively

requires that detailed plans and specifications for public improvements shall not only be ordered by the Board of Public Work, prepared and filed before advertising for bids therefor, but it requires that contractors shall be furnished with the same plans and specifications. The element of real competition is as indispensable to the validity of public contracts as the element of consideration in private contracts. Sec. 612, Revised Ordinances of Kansas City; Sec. 3, Art. 8, Charter of Kansas City; Albers v. Paving Co., 196 Mo. App. 273; Koch v. Interriver Drain. Dist., 257 S. W. 177; Independence v. Knoeper, 134 Mo.'App. 604; Findley-Kehls Inc. Co. v. O'Connor, 256 S. W. 798. (3) Defendants' Exhibits A, B and C did not, directly or indirectly, form any part of the plans and specifications in the contract in controversy for two reasons: (a) they had never been prepared, approved and adopted by the Board of Public Works of Kansas City, for the project in controversy, or for any other project; (b) because they were office equipment prepared primarily for use of draftsmen in preparing plans and specifications for particular projects. McCormick v. Moore, 134 Mo. App. 669; Richardson v. Walsh, 142 Mo. App. 328; Mullins v. Everett, 172 Mo. App. 186. (4) The pretended contract with the defendant W. C. Mullins Construction Company was void, because the notice to property owners was inadequate and insufficient. It did not inform them of the intention of the city to tear up, destroy and abandon a sewer of adequate capacity for all present and future needs for which they had just been assessed. Schulte v. Curry, 173 Mo. App. 586. (5) The charter requires when a sewer project is built in a bed of a natural stream or watercourse, and land is reclaimed, that the benefits of this improvement be taxed to the abutting property. (a) No benefits were assessed in this proceeding, so the proceeding is void. Sec. 6, Art. 8, p. 324, Charter of Kansas City; Smith v. City of Westport, 105 Mo. App. 221; Nevada v. Eddy, 123 Mo. 546; State v. Banks, 45 Mo. 528; Kiley v. Oppenheimer, 55 Mo. 376.

*R. E. Ball, M. A. Fyke, E. L. Snider* and *Fenton Hume* for respondents.

(1) It is as impossible to maintain a case proved, but not pleaded, as it is one pleaded, but not proved. Appellants' Point 5 is without the issues. (2) All necessary information to enable bidders to bid intelligently was accessible. Walsh v. Bank, 139 Mo. App. 641; Sheehan v. Gleason, 46 Mo. 104; Inv. Co. v. Hall, 255 Mo. 675. (3) No allegation or proof is made of fraud, collusion, or bad faith in letting contract. Johnson v. Duer, 115 Mo. 366; Herman v. St. Louis, 112 S. W. 259. (4) Construction of a sewer is a question for the Legislature and when determined by ordinance of the common council is not subject to review by the court. Pryor v. Const. Co., 170 Mo. 451; Nichols v. Kansas City, 291 Mo. 690; St. Louis v. Fisher, 167 Mo. 564; Kansas City v. Oil Co., 140 Mo. 468; Heman v. Allen, 156 Mo. 434; Heman v. Schulte, 166 Mo. 417; Embree v. Kansas City Road Dist., 240 U. S. 250; Moberly v. Hogan, 131 Mo. 19; Malleable Casting Co. v. Prendergast, 288 Mo. 222; McGee v. Walsh, 249 Mo. 266. (5) It is too late to claim fraud after work was done, or at all unless contractor was a party thereto, or had notice thereof. Malleable Casting Co. v. Prendergast, supra; Land Imp. Co. v. Louis, 257 Mo. 302; Heman v. Allen, supra; Mullins v. Cemetery, 259 Mo. 152. (6) In any event there is no evidence in the case, sufficient to warrant any proof on that subject. Paving Co. v. Field, 188 Mo. 203. (7) No taxable land is outside of the consolidated district. Malleable Casting Co. v. Prendergast, supra.

BLAIR, J.—Suit in equity to cancel certain special tax bills issued in payment for a sewer in Kansas City. From a judgment for defendants, plaintiffs have appealed.

By Ordinance 45305, passed and approved May 2, 1923, sewer districts 457, 458 and 459 were constituted

a joint sewer district.  Such ordinance provided for the construction of a joint district sewer to care for storm water and sanitary sewage, and provided that such joint district sewer might be constructed as a unit or in sections. It was to be paid for by special tax bills issued against each lot or parcel of land within such joint sewer district.  Said sewer districts had been previously created and were served by a sanitary sewer sufficient at the time to care for the sanitary sewage of the districts, but not to take care of the storm water.  Such water followed a natural drain or watercourse.  The joint district sewer here involved comprised 340 feet of 72-inch sewer, 1220 feet of 84-inch sewer and 660 feet of double-box reinforced concrete sewer 5′ 3″ x 5′ 3″ with catch basins, manholes, interceptor, etc.  The 72-inch and 84-inch portions were circular.  Said joint district sewer was constructed almost entirely in sewer district 459 along said natural drain, which carried the surface water of that and the other sewer districts comprising the joint sewer district.  As constructed the joint district sewer extended from Sixty-eighth and Oak streets to Seventy-first Street and Grand Avenue.  There is no contention that the construction contract was not substantially complied with.

The joint district sewer was built by W. C. Mullins Construction Company as contractor.  Defendant W. C. Mullins is president of that company.  Defendant Heim-Overly Realty Company is the owner of the tax bills here sought to be canceled.  Defendants W. C. Mullins and W. C. Mullins Construction Company filed answers disclaiming any interest in said tax bills.  Defendant Heim-Overly Realty Company purchased the tax bills after the work was performed and before this suit was instituted.

The petition alleged a number of grounds for cancellation of the tax bills, but it will not be necessary to notice them all.  As appears in the appellants' brief and as stated in oral argument here, appellants now rely

upon only three grounds for such cancellation. The facts will be further developed in connection with our consideration of the several contentions.

I. The assault upon the tax bills, which appears to be most earnestly pressed here, is that plaintiffs' Exhibits 6 and 7, which were the original tracings from which blue prints were furnished to prospective bidders, did not contain detailed plans for the reinforced monolithic concrete type of sewer, for which the contract was let, and that such plans and accompanying specifications (Exhibit 8) did not contain sufficient data and information upon their face to enable a bidder to make an intelligent bid upon such type of construction and that they connot be pieced out by plans on file in the office of the city engineer covering the use of such material. Because of such alleged omissions, the contract let by the Board of Public Works is said to be void.

Upon Exhibit 7 there appear cross sections of the double-box sewer and also cross sections of the 72-inch and 84-inch sewers calling for the use of brick and plain monolithic concrete. There are no cross sections shown of either the 72-inch or 84-inch sewers, to be built of reinforced monolithic concrete or of segment blocks. Notice to contractors was published which called for bids upon 340 lineal feet of 72-inch sewers and 1220 lineal feet of 84-inch sewer, based upon the use of plain monolithic concrete, reinforced monolithic concrete *or* segment blocks. Brick construction was not called for. A contractor could submit his bid based *upon either or all* of said materials. Upon Exhibit 6 appeared the following note: "If contract is let for Reinforced Monolithic Concrete Sewer, Supplementary Plans will be furnished."

Defendants offered in evidence Exhibit B, which was the plan of a standard section of reinforced monolithic concrete sewer which had been used wherever sewers had been built of that material by Kansas City since 1917,

*Margin note:* Detail Information to Bidders.

when such plan was made.  Blue prints of Exhibit B were on file in the office of the city engineer and could be obtained by prospective bidders or the public upon application.  Some of the contractors kept such plan on file in their offices.  Mr. Mullins testified that his company had the same in its office and that it was before his company when its bid was prepared and submitted.

Only Exhibits 6, 7 and 8 were delivered to prospective bidders who called for the plans and specifications in response to the notice to contractors.  Exhibit 9 showed that blue prints and specifications had been delivered to nine prospective bidders.  The notice to contractors stated that the plans and specifications could be seen at the office of the Secretary of the Board of Public Works. Both the specifications and the notice to contractors provided that reinforced monolithic concrete might be used in the construction of the sewer.

Upon the 72-inch and 84-inch circular sewer, four bids for plain monolithic concrete, two bids for reinforced monolithic concrete and four bids for segment blocks were received.  T. M. Walsh and W. C. Mullins Construction Company were the only bidders submitting bids based upon the use of all three materials.  The Mullins Construction Company bid was the lowest bid on all three.  The contract was awarded to that company for reinforced monolithic concrete construction.

It is the contention of plaintiffs that bidders did not have sufficient information from Exhibits 6, 7 and 8, which were the plans and specifications (including a proposed form of contract), to bid intelligently upon the use of reinforced monolithic concrete construction. They offered the testimony of a number of witnesses to the effect that the use of Exhibit B was necessary in order to bid upon that material.  Some testimony to the contrary was offered by defendants.  We think plaintiffs are correct in this and that an intelligent bid upon the work, using reinforced monolithic concrete for the circular portion of the sewer, could not be made without

310 Mo. Sup.—39.

studying Exhibit B or being familiar with its require-
ments because of former examination or use of that
plan.   There is no cross section for a sewer of that ma-
terial, either on Exhibit 6 or Exhibit 7.   The specifica-
tions refer to the plans for details thereon.   As there
was nothing on Exhibits 6 and 7 to furnish such details,
they could only be obtained by following up the sugges-
tions in the note on Exhibit 6 and going to the Board of
Public Works or the city engineer for Exhibit B.

The question then is whether such situation re-
stricted the bidding and rendered the contract illegal
and void.   Plaintiffs contend that this is true.   In so
far as here pointed out in the briefs and our examination
has disclosed, the proceedings preliminary and incident
to the making of public improvements, as provided by
Section 3, Article 8, of the Kansas City Charter of
1908, were complied with, unless the omission of such de-
tailed plan for reinforced monolithic concrete upon Ex-
hibits 6 and 7 amounts to a failure of compliance there-
with.   Paragraph 6 of said Section 3, Article 8, requires
the Board of Public Works to adopt and perfect plans
and specifications for the proposed public improvement,
and the next paragraph following provides that, *after
the adoption of such plans and specifications*, the board
shall advertise for bids.   By Ordinance 612 (page 698,
Charter and Ordinance of Kansas City, 1909) it is pro-
vided that, before advertising for bids, the board "shall
cause to be made out by the *city engineer* detailed plans
and specifications for the work to be done, and keep
same on file in his office for information of all de-
siring to bid on the work."   Clearly, if the note put upon
Exhibit 6 that, "If contract is let for Reinforced Mono-
lithic Concrete Sewer, Supplementary Plans will be fur-
nished," brought the detailed plan for such reinforced
monolithic concrete sewer in as part of the plans and
specifications adopted by the board before advertising
for bids, the foregoing charter and ordinance provisions

were complied with. This then is the very heart of the question for determination.

While such note upon Exhibit 6 stated that supplementary plans would be furnished if the contract was let for reinforced monolithic concrete, the necessity of a bidder examining such supplementary plans before bidding was readily apparent to any prospective bidder. The language used was equivalent to a statement that, if a bidder desired to bid upon construction with that character of material, he would be furnished plans therefor.

The authorities cited in the first and second paragraphs of plaintiffs' "Points and Authorities" go only to the necessity of plans and specifications for public improvements being prepared, approved and on file before advertising for bids. The charter and ordinance so provide and the proposition cannot be gainsaid. Such authorities are not of assistance upon the question above outlined as determinative. Under Points and Authorities III plaintiffs cite McCormick v. Moore, 134 Mo. App. 669; Richardson v. Walsh, 142 Mo. App. 328, and Mullins v. Everett, 172 Mo. App. 186, upon the theory that they support their contention that Exhibits A, B and C do not form any part of the plans and specifications because they had never been prepared, approved and adopted by the Board of Public Works for the project in controversy or for any other project and were mere office equipment for use of draftsmen in preparing plans and specifications for particular projects.

Each of those cases followed Dickey v. Holmes, 109 Mo. App. 721, in holding that specifications for sewers must have been prepared and on file when the initiatory ordinance is passed which prescribes the dimensions, material and character of the sewer to be built. That case and the cases which approved and followed it upon that point were expressly disapproved by Division One of this court in Waddell Investment Company v. Hall, 255 Mo. l. c. 684. In Richardson v. Walsh, supra, Judge

JOHNSON said: "Either the initiatory ordinance must prescribe on its face the dimensions, material and character of the sewer, or the omitted provisions must appear in specifications on file in the designated place at the time of the enactment of the ordinance to which reference is made in the ordinance. Blank forms are not specifications."

In Mullins v. Everett, supra, the propriety of incorporating specifications *by reference* so as to make them a part of the initiatory ordinance was fully recognized. The detailed plan for reinforced monolithic concrete sewer shown by Exhibit B in this case was complete in every way showing, as we understand the evidence, the size, location and manner of placing the reinforcement. That exhibit was not indefinite or lacking in positive information, as would be true of blank form specifications. All the evidence shows that the detailed plan for 72-inch and 84-inch reinforced monolithic concrete sewer was set forth in Exhibit B and that same was the only plan for that character of construction on file in the engineer's office since 1917 and that all sewers of that size and material, built since that time, were built in accordance with such plan. It is not pretended that there were other or different plans for that size of reinforced monolithic concrete sewer in use or on file at the time bids were prepared and submitted for the work in question or that any contractor was deterred from bidding upon that kind of material by any uncertainty in that regard or was not fully informed that bids upon reinforced monolithic concrete sewer construction were invited. Exhibit 6 (one of the plan sheets) and Exhibit 8 (the proposed contract and the specifications) plainly notified bidders that bids based upon any one or all of the three kinds of material were sought.

We hold that the note upon Exhibit 6 was sufficient to incorporate Exhibit B by reference as part of Exhibit 6 and to advise prospective bidders that they might procure plans for reinforced monolithic concrete sewer at

the engineer's office, if they desired to submit a bid upon that material. As there is no pretense that any bidder was thereby actually misled or deterred from bidding or that the property owners within the joint sewer district were in fact injured thereby, we must regard the contention of plaintiffs in this respect as one of the "extreme technicalities resorted to by many property owners to escape the payment of their just proportion of a public necessity," referred to by Judge GRAVES in Waddell Investment Company v. Hall, supra, at page 692.

While probably not matter of decision in State ex rel. Jones v. Robertson, 262 Mo. 535, what this court in banc there said, in disposing of the contention that the opinion of the Springfield Court of Appeals there under review was in conflict with controlling decisions of the Supreme Court, is at least enlightening. BROWN, J., there said:

"Respondents' opinion does not recite that there were no plans on file with the city clerk or engineer showing the dimensions and materials for the sewer; on the contrary, there is evidence recited in the opinion from which it might be inferred that the city council of Springfield had adopted specifications for all its district sewers several years prior to 1901, which specifications were accessible to all bidders, and that the contract for the particular sewer out of which this litigation arose was advertised and let to the lowest bidder in conformity with good business principles. With such facts before them if respondents had reversed the judgment of the circuit court they would have been placing form above substance."

II. It is next contended that the contract for the construction of said sewer was void because the notice to property owners was inadequate and insufficient in that it did not inform them of the intention of the city to tear up, destroy and abandon a sanitary sewer of adequate capac-

Destruction of Existing Sewers.

ity for all present and future needs for which they had just been assessed.

In this connection it should be stated that it appears from the record that a portion of the existing district sewer was torn out where it was in the way of the new joint district sewer. There the new joint district sewer served the purpose of both. Where the course of the two sewers deviated, the sanitary sewer was properly connected with the joint district sewer. We do not find in the record any testimony or exhibit showing exactly how much of the 18-inch sanitary sewer was torn out; but from an examination of Exhibit 7, whereat are shown the distances between manholes of the new sewer, it is reasonably apparent that, for at least 600 feet, the new joint district sewer and the existing sanitary sewer must have coincided. Such portion of the sanitary sewer was the only portion thereof necessarily disturbed by the construction of the new joint district sewer. From such examination of this exhibit, we assume that approximately two-sevenths of the sanitary sewer were torn up. The remainder of it was connected up with the new sewer and was as serviceable for sanitary purposes as before.

The first paragraph of Section 3, Article 8, of the 1908 Charter, provides that a proceeding for constructing or reconstructing public, district or joint district sewers shall be begun by the adoption of a resolution by the Board of Public Works "which resolution shall state the nature of the improvement and, when the same is to be paid for in whole or in part in special tax bills, the method of making assessments to pay therefor."

The second paragraph of said Section 3, Article 8, provides for the notice directed to the property owners interested in the improvement "which notice shall recite the substance of the resolution and that a hearing will be had by the said board at their office concerning the proposed improvement, and the date upon which the hearing shall be had."

There is nothing in either of said paragraphs requiring the board to give property owners notice of the details incident to the making of the improvement. They need only be notified of the time and place of the hearing and the substance of the resolution. Such resolution is only required to state the nature of the improvement and the manner in which it is to be paid for in case it is to be paid for in special tax bills. Information of the nature of the sewer improvement should doubtless include at least its character, location and course. We are cited to no authority requiring property owners to be notified of mere details incident to the construction of such an improvement. Schulte v. Currey, 173 Mo. App. 578, the only case cited by appellants to this point, goes no further than we have above suggested. At page 587, Judge STURGIS quoted with approval the following language from Kirksville ex rel. v. Coleman, 103 Mo. App. 215:

" 'In such case, under a resolution couched in the general language of this one, they would be compelled to protest against *any* pavement, or else give the council a *carte blanche* to use any material, at any price, it might choose. The property owner ought not be put to such dilemma. The resolution should inform the citizen, substantially, of the kind and character of improvement, to the end that he may exercise his election of withholding the power as contemplated by the statute.' "

The nature of the improvement set forth in the resolution for the improvement here in question was thus stated:

"The nature of said improvement being as follows, to-wit: A sewer for the collection and carriage of storm water and sanitary sewage in the same pipe or channel with the necessary appurtenances in the way of manholes, headwalls, transformers, junction chambers, interceptor, catch basins and their connections, inlets for tributary sewers, and connections with existing sewers, in a proposed street and sewer right of way from the intersection of 71st Street and Grand Avenue northeasterly ap-

proximately two thousand one hundred feet, to a point
in Oak Street, approximately three hundred thirty-five
feet north of the center line of proposed 69th Street,
through an interceptor to the sanitary outlet into a joint
district sanitary sewer constructed under Ordinance No.
36619, approved December 6, 1919, and a storm sewer
outlet into an existing watercourse.

"Said sewer shall conform to the plans and speci-
fications to be hereafter adopted and perfected by this
board. Payment for said sewer shall be made in special
tax bills issued against each tract of land in said joint
sewer district in the proportion that each tract bears
to the whole area of land in said joint sewer district, ex-
clusive of public streets, alleys and highways, according
to the provisions of Article VIII of the Charter of Kan-
sas City, relating thereto."

The exact language of the resolution in this re-
spect was repeated in the notice to property owners. We
fail to find anything in the record tending to show whether
or not property owners attended the hearing before the
Board of Public Works announced in said notice. But
the record does show that such property owners, possi-
bly thirty of them, appeared before a committee of the
council when the ordinance confirming the contract was
before that body and protested vigorously against the
construction of the joint district sewer upon the ground
that the property owners had just finished paying for
the sanitary sewer which was entirely adequate and be-
cause they would not be benefited by the proposed joint
district sewer. Senator Proctor appeared before said
committee as counsel for the property owners. He testi-
fied that he did not know at that time that the construc-
tion of the joint district sewer involved the destruction
of the sanitary sewer.

In spite of such protest the council passed an
ordinance confirming the contract with the W. C.
Mullins Construction Company. Defendants contend
that, under the provisions of Section 24, Article 8, of the

charter, the passage of the confirmation ordinance cured errors or irregularities, if any, on the part of the city in the proceedings relating to such improvement up to and including the time such ordinance took effect and that the tax bills issued in payment therefor cannot now be defeated by reason of any such error or irregularity. It is said that this court has never passed upon the effect of such provision. It will not be proper for us to consider such effect or the power of the people of Kansas City to make such provisions in their charter, unless we hold that such errors or irregularities in the proceedings have occurred. It will be time enough to consider such question when a case comes here where such errors or irregularities are deemed to be present.

The property owners had the notice which the charter required the Board of Public Works to give them. The resolution stated the nature of the improvement and the notice recited the substance of such resolution. That was all the charter required to be done. The facts that there was already a sufficient sanitary sewer in existence and that parts of it necessarily had to be destroyed in the construction of the joint district sewer are not sufficient in themselves to defeat a public improvement deemed necessary by the Board of Public Works and the council. It is a matter of common knowledge that, in a great and rapidly growing city, the up-to-date building of today becomes the obsolete and insufficient building of tomorrow. Public improvements, such as sewers, rapidly become inadequate to serve a fast developing portion of such city and, when deemed inadequate by the legislative body of the city, must be superseded, even though such action imposes hardship upon property owners. The record shows that the territory comprised within the joint sewer district where this sewer was built was being rapidly built up with fine residences. The Board of Public Works in the first instance and then the Common Council were the constituted judges of the needs of the joint sewer district. The necessity for the construction

of such joint district sewer and the benefits to be derived therefrom, as well as the necessity for destroying the existing sanitary sewer or part thereof, were purely legislative questions and the courts may not substitute their judgment for the judgment of the Council. [Prior v. Const. Co., 170 Mo. l. c. 451; Nichols v. Kansas City, 291 Mo. 690; Heman v. Schulte, 166 Mo. l. c. 417; McGhee v. Walsh, 249 Mo. l. c. 283.]

III. The final contention made in the brief and in the oral argument of plaintiffs is that the tax bills are invalid because the building of the joint district sewer in the bed of a natural stream or watercourse was a recla-
Reclamation        mation project and that the charter requires
Project.        the benefits of such an improvement to be as-
sessed against the abutting property owners. Defendants contend that no such ground for canceling the tax bills was alleged in the petition and that such contention of plaintiffs in this court is outside of the issues made by the pleadings and cannot be considered. We are relieved of the necessity of a careful study of the lengthy petition by plaintiffs' statement in their reply brief that paragraph 5 of the petition, on page 34 of the abstract, contains the allegations upon which this contention is based. We quote said paragraph in full:

"Plaintiffs further state that the said tax bills are illegal, null and void for the further reason that a short time prior to the construction of this said sewer, there had been constructed, under the direction of the defendant, Kansas City, Missouri, the 5th section of the said Town Fork sewer, at or near and along the same route and in the same locality as the sewer above mentioned; that the said 5th section of said Town Fork sewer previously constructed was wholly adequate and sufficient for any and all needs and uses of the residents and property owners and the property in the said sewer districts, but that the said sewer constructed by the defendants W. C. Mullins and the W. C. Mullins Construction Company, a corporation, was constructed or caused to be constructed

by the defendant Kansas City, Missouri, at the request
of certain parties, two or three only in number, for their
sole convenience and benefit in the development of a track
of ground constituting only a small portion of the three
said districts against the property in which said tax bills
were assessed.''

The only grounds for cancellation of the tax bills
there attempted to be alleged are that there was no need
of the joint district sewer because of the existence of
an entirely adequate district sewer and because the
proposed sewer was for the sole convenience and bene-
fit of only two or three persons ''in the development of
a tract of ground constituting only a small portion of
the three districts.'' By no stretch of the imagination
can it be said that the pleader intended, by the allegations
contained in said paragraph, to charge that the tax bills
were invalid because the project was a reclamation proj-
ect. Without resorting to dictionary authority, an ordi-
narily intelligent person would regard ''reclamation'' as
the rescue or recovery of something lost or the making
valuable or useful of that which was previously worth-
less or useless. On the other hand, ''development'' im-
plies improving or making better that which one already
has in enjoyment or making it more valuable or useful
when it had a previous value or use. An examination
of standard dictionary definitions but confirms the dis-
tinction above drawn.

Said paragraph 5 of the petition did not charge that
the joint district sewer was laid in a natural stream or
watercourse or even suggest such fact. It merely al-
leged that the new sewer was constructed along the same
route and in the same locality which the existing sani-
tary sewer already followed and occupied. The allega-
tions of that paragraph went solely to the lack of neces-
sity for the new sewer and absence of general benefit to
be derived therefrom. It could only be so understood.
Nor did it allege that the cost should have been assessed
only against the abutting property owners.

The contention of invalidity made here in plaintiffs'
Point V was not raised in the petition, was not before

the court below and therefore cannot be considered by us. It is not an instance of an incompletely stated cause of action, as contended by plaintiffs in their reply brief. It is a case of entire want of allegation. It is true that plaintiffs offered some evidence below having a bearing upon the contention here made. It was received over the objection and exception of defendants upon the ground that such testimony was not within the issues. The trial judge indicated that he would determine its relevancy thereafter and evidently gave it no consideration in his determination of the issues made by the pleadings. We cannot now consider such contention nor evidence offered in support thereof.

IV. The foregoing considerations dispose of all the contentions now made by appellants. We have found such contentions to be without merit. It results that the judgment below should be and is affirmed. *Graves, C. J.,* and *Ragland* and *Atwood, JJ.,* concur; *Woodson, J.,* dissents; *Walker* and *White, JJ.,* absent.