The Kansas City Grading Co. v. Holden.

107 305
115 376
117 453
107 305
128 294

THE KANSAS CITY GRADING COMPANY, *Appellant*, v. HOLDEN *et al.*

DIVISION TWO.

1.  **Taxation:** RIGHT TO LEVY. The right to levy taxes either general or special is vested primarily in the legislature.

2.  **Municipal Taxes:** LEVY. The power to raise taxes for municipal purposes may be, and generally is, delegated to, and exercised by, the legislative body of the municipality.

3.  ———: LOCAL ASSESSMENTS: KANSAS CITY CHARTER. The apportionment of the cost of a local improvement among owners of property subject to assessment in Kansas City is left to the determination of the common council or of such officers as may be intrusted with the duty, and the remedy of a person claiming to be unfairly assessed is to apply to the statutory tribunal vested with the power of review.

4.  ———: ———. Where no constitutional objection is raised or fraud charged, the inquiry in the foregoing case will be limited to the question whether the municipal authorities acted within, and in conformity to, the powers conferred upon them.

VOL. 107—20

5. ———: ———: TAXING DISTRICT. The fact that a person outside of the taxing district may receive benefits equal to those who are assessed with the cost of improvement will not affect the validity of the assessment against the latter.

*Certified from Kansas City Court of Appeals.*

REVERSED AND REMANDED.

*Johnson & Lucas* for appellant.

(1) No testimony was admissible to sustain the so-called special defenses tendered by the answer, viz., *First.* That the effect of the contract between the city and the contractor was to grade Ninth street from Broadway to Washington, etc., without cost to the property-owners. *Second.* That had said contract been let in the ordinary manner, and without direction as to where the waste earth should be placed, that it could have been let much cheaper. *Third.* That the engineer of the City of Kansas did not have the power to order or compel the grading of any other street or alley at the cost of the real-estate owners benefited, or at the expense of the real estate of other persons on distant streets and not benefited. ( *a* ) If defendants were not injured by the work being so done as to benefit others, they cannot invoke the benefit to others to discharge their liability to pay for benefits accruing to them. *Mayor v. Long*, 31 Mo. 374; *Moore v. Albany*, 98 N. Y. 396. ( *b* ) The contract was let to the lowest bidder after the same had been duly advertised, and the testimony shows that the places where the earth was deposited were the nearest to the place of excavation at which it could have been deposited. ( *c* ) It nowhere appears from the pleadings that the city engineer sought to grade any other street at the cost and expense of defendants, and for that reason plaintiff's objection should have been sustained. (2) No authorities need be cited to show that the action of the

court in ordering section 31 of chapter 38 of the ordinances of the City of Kansas to be read in evidence was error. And this action of the court could have none but a prejudicial effect upon the jury so far as the plaintiff was concerned. (3) Plaintiff's instruction should have been given. Defendants admitted that the contract had been let to plaintiff, and on the part of plaintiff fully complied with, and introduced no evidence that tended to show that the cost of grading said street had been increased by the mode adopted in letting the contract, or that they had been injured or damaged thereby. There was a complete failure of testimony. *Morgan v. Durfee*, 69 Mo. 469; *Charles v. Patch*, 87 Mo. 450; *Hunt v. Railroad*, 89 Mo. 607; *O' Reilley v. Kingston*, 39 Hun, 286; *Trans. Co. v. Huling*, 22 Mo. App. 654. (4) The instruction given for defendants ought to have been refused. *First*. It was for the court to determine the legal effect of the plans and specifications, and advertisement, bid and contract, and it was error to submit an undisputed question to the jury. *Hickey v. Ryan*, 15 Mo. 62; *Miller v. Dunlap*, 22 Mo. App. 97; *Fruin v. Railroad*, 89 Mo. 404. *Second*. The instruction given does not correspond with the pleadings. *Bank v. Armstrong*, 62 Mo. 59; *Bank v. Murdock*, 62 Mo. 70. *Third*. The issues cannot be changed by an instruction, and this the instruction in question seeks to do. *Glass v. Gelvin*, 80 Mo. 297; *Beauchamp v. Higgins*, 20 Mo. App. 514. The issue presented by the answer was that, by reason of the mode adopted in letting the contract, the cost of grading the street had been increased. The instruction told the jury that if they found that the contract, advertisement and bid contained certain specifications, then the contract was void. *Glass v. Gelvin, supra. Fourth*. The city had the right to let the contract, and the contractor or city, the right to use the waste earth in filling other streets in the city, and no damage was done to defendants by

reason of any action of the city, its engineer or con-
tractor. *Huston v. Ft. Atkinson*, 56 Wis. 350; *New
Haven v. Sergent*, 38 Conn. 50; *Bissell v. Collins*, 28
Mich. 277; *Neenan v. Smith*, 60 Mo. 292.

*C. O. Tichenor* for respondents.

MACFARLANE, J.—This action is upon special tax
bills for grading May street in Kansas City, between
Sixth and Ninth streets. Plaintiffs were defeated in
the circuit court, and appealed to the Kansas City court
of appeals, in which the judgment was affirmed by a
majority of the court, RAMSAY, J., dissenting. The
case was thereupon certified to this court, the judge so
dissenting believing the decision of the majority to be
in conflict with certain decisions of this court and of
the St. Louis court of appeals.

Of the specifications under which the contract for
grading the street was let to plaintiff, was the follow-
ing: "The earth and quarry rubbish will be deposited
on Ninth street from Broadway to Washington streets,
until that part of Ninth street is brought to grade and
full width. The remaining part will be deposited in
Eighth street between Broadway and Bank streets; on
Bank street between Seventh and Ninth streets, and
on alley in block 2, Lucas Place addition."

The circuit court held the whole contract, and the
special assessment of benefits against the property-owners
on May street, for the cost of such improvements, void,
for the reason that such property-owners, by the terms
of the contract, were taxed to pay for grading Ninth
and other streets, lying outside the district, taxable for
the grading of May street, and for which they derived
no special benefits.

The discussion was confined wholly to the questions
involving the validity of the contract, and it was and
will be assumed, in our consideration of that question,
that the charter of the city confers upon the city
authorities power to grade streets in the city, when

requested by the requisite number of property-owners thereon, at the expense of the owners of the property on the streets to be graded; that provision is made for assessing and apportioning the expense of the improvement among the property-owners, to be charged therewith in proportion to the benefits derived therefrom; that all proper and necessary steps were taken to authorize the grading of May street; that the grading was done according to contract; that the assessment for the whole cost of grading May street, under the contract, were regularly made against the owners of property on that street, and no other; and that the tax bills sued upon were regularly issued and are in proper form.

It is undisputed that the grading of May street, under the contract, consisted wholly of excavations; that Ninth street between Washington and Broadway where, under the contract, the excavated dirt was to be deposited, was crossed by a deep hollow, to fill which would greatly improve that street and benefit property-owners thereon; that the point at which May street intersects Ninth is about three hundred feet from said hollow.

Sections 1017 and 1018, chapter 50, of the general ordinances of the city, were read in evidence, as bearing on the question, and are as follows:

"Sec. 1017. When any ordinance shall provide for any particular grading, and the excavation shall exceed the embankment in doing the work, the surplus material shall be used, as far as practicable, to make embankments elsewhere on such other streets, avenues or highways in the city, as the city engineer in his discretion may designate. All plans and specifications shall provide, as far as practicable, for the disposition of such surplus material. In case of any such grading, when the embankment or filling shall be in excess of the excavation, the material to be borrowed shall, as far

as practicable, be taken from other streets, avenues or highways in the city where excavation is to be made under the direction of the city engineer.

"Sec. 1018.   When any street, avenue or highway, or part of either, is to be graded, as provided in any ordinance, and the city engineer shall be of the opinion that the work can be done to better advantage in connection with the grading or otherwise improving of some other street, avenue or highway, in whole or in part, he shall, if he deem it advisable, before proceeding to let a contract, report to the common council for its action a plan for doing the work ordered in connection with work elsewhere, so that two or more places may be improved together, and under one ordinance and contract, with a view to divide the cost of the work between different places, and lessen the charges on property."

I.   The right to levy taxes, either general or special, is vested primarily in the legislature.   The power to raise local taxes for municipal purposes may be, and generally is, delegated to, and exercised by, the legislative body of the municipality.   This right, with some limitations and restrictions upon its exercise, has been conferred upon Kansas City.   Section 8, article 8, of its charter requires the cost of grading any street to be charged as a special tax on all property on both sides of the street graded.

II.   Where no constitutional objection is raised, or fraud charged, the inquiry in each case can only be directed to the question whether the municipal authorities acted within, and in conformity to, the powers conferred upon them.   What effect the improvement may have had upon property outside the taxing district, or upon streets other than the one upon which the work was ordered, are not matters for consideration, in determining the validity of the tax assessed.   It would be impossible to adopt any rule for either general or special taxation that would operate with exact and equal

justice in every case throughout the district. The benefits accruing to one will exceed those accruing to another. One outside the district who pays no taxes may receive benefits equal to those upon whom all the burdens fall. Public policy, therefore, demands that the action of the constituted authorities be conclusive. "Uniformity in the manner of the assessment, and approximate equality in the amount of exactions within the district," are all that is required. Cooley, Const. Lim. [3 Ed.] star pp. 499, 501; Cooley on Taxation [1 Ed.] 428–9; *City of St. Louis v. Ranken*, 96 Mo. 498; *Nichols v. Bridgeport*, 23 Conn. 189; *Railroad v. Connelly*, 10 Ohio St. 159; *Commonwealth v. Woods*, 44 Pa. St. 113.

III. No plan has been provided, in the general scheme for local assessment in Kansas City, for apportioning any part of the cost of grading one street, against the property fronting upon another, though the latter may, also, have been benefited by the improvement, nor for compensation for the incidental improvement of one street, by grading another, except under section 1018 of the ordinances, *supra*. The power of apportionment is intrusted to the city authorities, and not the courts, and if the apparent hardship of this case could have been relieved, it must have been under the provisions of this section. The charter provides that no street or any part thereof shall be graded at the expense of property-owners owning the property fronting on such street, unless a majority of the resident owners of such property petition therefor. Section 1018 of the ordinances must be construed with reference to this limitation, and it nowhere appears that the property-owners on ninth street presented to the council the requisite petition, without which no jurisdiction to proceed under section 1018 was acquired.

IV. The power of local taxation for public improvements is put upon the ground of compensation, upon

the reason that the property assessed is specially benefited and enhanced in value to the extent of the assessment. Cooley, Taxation, 416 ; *McGonigle v. Allegheny City*, 44 Pa. St. 118 ; *Litchfield v. Vernon*, 41 N. Y. 123 ; *Wright v. Boston*, 9 Cush. 233 ; *Lockwood v. St. Louis*, 24 Mo. 20.

Bearing in mind this principle upon which the whole right of such taxation rests, it is very clear that if defendants were to receive compensation for the charge imposed upon them, and there was no fraud or collusion, to their prejudice, practiced, they have no legal ground of complaint, because the improvement of their property also resulted incidentally in the improvement of that of others. It should certainly be no ground of complaint that the expense they incurred, in the improvement of their own property, though enforced and against their will, could be utilized in the improvement of other streets, and thus become a public benefit. *Mayor v. Long*, 31 Mo. 374; *Moore v. City*, 98 N. Y. 396.

The contract seems to be entirely within the powers granted under the charter, and is substantially in accordance with the methods provided by ordinance for carrying out the provisions of the charter. The charter places the responsibility of determining what improvement shall be made, and of prescribing the methods of making them with the common council. The courts have nothing to do with the wisdom of its judgment or discretion, so long as it keeps within its powers. Cooley on Taxation, 450; *St. Louis v. Oeters*, 36 Mo. 456 ; *Matter of Dugro*, 50 N. Y. 513 ; Welty on Assessments, sec. 308 ; *Fagan v. Chicago*, 84 Ill. 231 ; *Brewster v Davenport*, 51 Iowa, 427 ; *Garrett v. City*, 25 Mo. 505.

No objection to the system adopted by the council being pointed out, and the contract, being in harmony with the system, should be held valid, and we think both the circuit court and court of appeals erred in holding otherwise.

V. A special defense to the action was interposed in which it was charged that the council, in passing the ordinance requiring the improvement of May street, did so without compliance with the provisions of the charter conferring the power upon it, and that its action was for that reason without jurisdiction and void. These objections were: *First*, that the petition was not signed by the requisite number of the property-owners on the street; *second*, that the petition was not published for the time and in the manner required; and, *third*, that no notice was given of the special meeting of the council at which the ordinance was passed. This answer was stricken out on motion of plaintiff. Both parties request that, in case of a reversal of the judgment on other grounds, the action of the court in striking out this defense be reviewed. It is not claimed that the question is properly before us upon exceptions saved, or otherwise. Questions of importance, not only in respect to the rights of property-owners in the city, but as affecting the welfare of the city itself, are raised by this answer, and we do not feel in justice to them, that we ought to volunteer an opinion on a partial presentation of questions not properly before us.

Judgment reversed, and cause remanded. All concur.