THE CITY OF ST. LOUIS, a Municipal Corporation, Appellant, v. EDWARD CAVANAUGH.—No. 40205.—207 S. W. (2d) 449.

Division One, December 8, 1948.

Rehearing Denied, January 12, 1948.

*George L. Stemmler,* City Counselor, *Oliver Senti* and *John P. Mc-Cammon,* Associate City Counselors, for appellant.

. *Gustav Vahlkamp, Ralph V. Wilson, Louis H. Steffen* and *Sol S. Tversky* for respondent.

[450] DALTON, C.—Defendant was prosecuted and convicted in City Court No. 1 of the City of St. Louis for the violation of an ordinance requiring the payment of tolls on the Douglas MacArthur Bridge (formerly Municipal Bridge), which extends across the Mississippi River between the State of Missouri and the State of Illinois. A fine in the sum of fifty dollars was assessed. On appeal, the St. Louis Court of Criminal Correction sustained the defendant's motion to quash the information and discharged the defendant. The trial court held that the Board of Aldermen of the City was without authority to enact an ordinance placing tolls upon the use of the bridge; and that the ordinance upon which the prosecution was based was null and void. The City of St. Louis has appealed.

Error is assigned on the trial court's action in sustaining the motion to quash the information and in discharging the defendant.

It is admitted that the bridge in question is owned by appellant; and that on July 20, 1946, respondent, a citizen and taxpayer of the city, drove a pleasure motor vehicle across the bridge and refused to pay the ten cents toll therefor, as provided by the ordinance under which he was arrested and prosecuted. In the motion to quash the information, respondent charged that, on the basis of certain facts therein stated and hereinafter referred to, the ordinance upon which the prosecution was based was null and void; and that the enforcement of the ordinance against respondent by requiring the payment of any toll for crossing the bridge, or the imposition of penalties for failure to pay such toll, would deprive him of his property and his liberty without due process of law in violation of specified provisions of the State and Federal Constitutions. Appellant, on the other hand, contends that the ordinance sought to be enforced against respondent was fully authorized by specified statutory and constitutional provisions.

The essential issue presented concerns the right and authority of appellant to provide by ordinance for the collection of tolls from owners or drivers of vehicles crossing the bridge.

Appellant was authorized by an Act of Congress, approved June 25, 1906, to construct, maintain and operate a railroad, wagon and foot-passenger bridge, and approaches thereto, across the Mississippi River at St. Louis. U. S. Statutes at Large, Vol. 34, p. 461, Chap. 3539. The Act was subsequently amended and extended from time to time until the bridge and its approaches were completed. This Act of June 25, 1906 further required compliance with an Act approved March 23, 1906, which provided that if tolls should be charged for transit over any bridge constructed under such act the tolls should be reasonable and just. 33 U. S. C. A., Sec. 494.

By an Act of the General Assembly of this state, approved April 6, 1905, Laws 1905, p. 94, now Sec. 7574 R. S. 1939, appellant and all other cities having one hundred thousand inhabitants or over were ''given the power and authority to build . . . within their corporate limits or within a reasonable distance outside thereof, a bridge or bridges . . . for public use by railroads, street cars, vehicles of all kinds and pedestrians, over . . . rivers and streams in Missouri or those forming a boundary between this and other states, and to acquire . . . land to be used for approaches . . . and to maintain, use and operate said bridge or bridges . . . either as toll or free bridges . . . as may by said cities be deemed expedient.''

By ordinance No. 22,366 approved April 3, 1906, appellant authorized the holding of an election on June 12, 1906, and the submission to the voters of several bond issue propositions. Proposition one was for a $3,500,000 bond issue ''for the construction and maintenance of a municipal bridge for public use by railroads, street cars, vehicles of all kinds and pedestrians over and across the Mississippi River and for the purchase of land to be used for approaches [451] thereto.'' Section 4 of the ordinance provided that the proceeds from the sale of any bonds authorized under proposition one should be used only for such purpose, towit, ''For the construction and maintenance of a municipal bridge for public use by railroads, street cars, vehicles of all kinds and pedestrians over and across the Mississippi River and located within the corporate limits of said City of St. Louis and the State of Illinois, and for the purchase of all lands to be used for approaches in connection therewith, *and which said bridge shall at all times be and forever remain a free bridge* . . . '' (Italics ours.) The ordinance further provided that the city reserved the right to grant non-exclusive franchises for the use of the bridge for public service purposes upon terms and conditions to be fixed by ordinance.

Ordinance No. 22,674, approved November 26, 1906, declared the results of the special election of June 12, 1906, approving the bond issue, and provided that the proceeds from the sale of the $3,500,000 bonds, so authorized, should be used ''for the construction and maintenance of a Municipal Bridge for public use by railroads, street cars, vehicles of all kinds and pedestrians over and across the Mississippi River, and for the purchase of land to be used for approaches thereto . . . ''

By ordinance No. 27,662, approved May 15, 1914, appellant authorized the holding of a special election on November 6, 1914, and the submission to the voters of a bond issue proposition, for not to exceed $2,750,000, the proceeds to be used ''for the construction of the eastern approaches of the Municipal Bridge across the Mississippi River, for public use by railroads, street cars, vehicles of all kinds

and pedestrians, over and upon the lands, right-of-way and easements located in the City of East St. Louis and elsewhere in the County of St. Clair, State of Illinois . . . '' Section 4 of this ordinance provided that if the bonds were authorized, the proceeds from the sale thereof should be used ''for the construction of the eastern approaches of the Municipal Bridge across the Mississippi River . . . ''; and further provided that ''the said approaches to be part of the said Municipal Bridge across the Mississippi River for the erection of which bridge there have heretofore been issued Three Million Five Hundred Thousand Dollars of bonds authorized at an election held in the City of St. Louis on Tuesday, the twelfth day of June, nineteen hundred and six, the said bridge being located within the corporate limits of the City of St. Louis and the State of Illinois, *and which said bridge and approaches shall at all times be and forever remain free* . . . '' (Italics ours.) The ordinance further provided for the issuance of non-exclusive franchises for public service upon terms and conditions to be provided by ordinance.

Ordinance No. 27,796, approved December 29, 1914, declared the results of the special election of November 6, 1914, approving the bond issue, and directed that the proceeds of the bonds so authorized, should be used ''for the construction of the eastern approaches of the Municipal Bridge across the Mississippi River for public use by railroads, street cars, vehicles of all kinds and pedestrians . . . ''

It is admitted that the proceeds derived from the sale of the bonds authorized pursuant to elections held under ordinances No. 22,366 and No. 27,662, were expended in the construction of the said bridge and its approaches and for the acquisition of land therefor.

By ordinance No. 37,406, approved February 13, 1929, a Municipal Bridge Commission was created. Section 9 of this ordinance established tolls for the use of the bridge by any railroad desiring to use it.

By ordinance No. 39,749, approved July 16, 1932, amending ordinance No. 37,406, appellant declared that ''the use of the vehicular deck of the Municipal Bridge by commercial vehicles has reached such volume as to interfere unduly with and endanger the rightful use of said vehicular deck for other purposes, and to cause undue wear and tear upon the roadway of such vehicular deck and the approaches thereto, entailing additional expense for upkeep and the policing of traffic on said vehicular deck . . . '' The Municipal Bridge Commission was given ''general supervision and control over the maintenance, [452] regulation and operation'' of the bridge. The ordinance provided that, for a period of one year from and after its effective date, certain tolls should be collected for the use of the bridge by vehicles, and further made it a misdemeanor to fail or refuse to pay the charges specified. Further amendments were made by subsequent ordinances, and the tolls were continued and applied

to the payment of bonds authorized and issued by the city "for the support, maintenance and care of children and sick, aged and insane, poor persons and paupers, and for poor relief, and for providing and maintaining charitable facilities and services."

By ordinance No. 42,701, approved September 20, 1943, appellant authorized the continuance of tolls, as theretofore provided by Sec. 2175 Revised Code of St. Louis, 1936, as amended, after the payment or discharge of all bonds issued for relief, as hereinbefore stated. All of such bonds were retired prior to July 20, 1946.

Subsection 14 of Section 1 of Article I of the Charter of The City of St. Louis, (1914) authorizes appellant to "construct, reconstruct, maintain, . . . public highways . . . bridges . . . and regulate the use thereof." The legislative power of the city, subject to the limitations of the charter, is vested in a board of aldermen. Sec. 1, Article IV, of the charter. The provisions are still effective. Section 31, Article VI of the Constitution of this state, 1945, provides: "The City of St. Louis, as now existing, is recognized both as a city and as a county unless otherwise changed in accordance with the provisions of this Constitution. As a city it shall continue for city purposes with its present charter, subject to changes and amendments provided by the Constitution or by law, and with the powers, organization, rights and privileges permitted by this Constitution or by law." See, also Art. IX, Secs. 20 and 23, Const. of Mo., 1875.

Respondent concedes that appellant had express statutory authority to build either a free bridge or a toll bridge, but insists that the people voted to construct a free bridge, as provided by the ordinances authorizing the submission of the bond issue propositions for the construction and completion of the bridge. Respondent says that the people, by voting the two bond issues, as submitted, "abolished the right of the Municipal Assembly to pass an ordinance placing tolls on the bridge after its completion."

Respondent further contends that "a municipal corporation does not have authority to use the proceeds derived from the sale of bonds for purposes other than those voted for affirmatively by the people"; and that "money procured by the sale of bonds, issued by virtue of a bond election, creates a trust fund and binds the city to see that the fund is applied for the purposes for which it was created and no other." The record presents no issue with reference to the use of the proceeds of the two bond issues. It is admitted that the funds, so derived, were expended in the construction of the bridge and its approaches and in the acquisition of the land therefor.

Respondent further contends that, to determine the purpose of a bond issue proposal, the ordinance submitting the bond issue should be taken in its entirety and not merely that portion which appears on the ballot. When so taken, respondent says that it is apparent the voters had a right to and did rely upon the "objects and pur-

poses'' as set out in section 4 of the ordinance, towit, that the funds be used for the construction and maintenance of a municipal bridge and approaches, which should ''at all times be and forever remain a free bridge.'' Respondent further says that ''it was the purpose of the people not merely to build a bridge, but primarily to build a particular kind of bridge, a free bridge, one that would forever remain a free bridge''; that ''the changing of a free bridge into a toll bridge would be to depart from the authorized purpose of the bond issue''; that the bonded indebtedness could be incurred only by the consent of two-thirds of the voters voting at an election held for the purpose; that ''without the assent of the voters the purpose or purposes of a bond election can not be changed''; and that ''the courts will not allow the bond proceeds to be used for purposes other than those voted for by the people.'' There is no contention that the bridge itself, so constructed and [453] paid for with funds derived from said bond issues, is impressed with a trust, or that respondent has any property right therein or right to use the bridge, free from toll because of it being impressed with a trust in his favor. The contention rather is that the ordinance requiring the payment of the tolls is null and void because the people voted bonds to finance the construction of the bridge ''with the express stipulation'' the bridge should be ''forever free;'' and that ''the Board of Aldermen lost its authority to enact an ordinance placing a toll on said bridge.''

Respondent further takes the position that ''a free bridge and a toll bridge are two distinct kinds of bridges,'' but respondent does not point out wherein a free bridge differs from a toll bridge in plan, cost or materials. On the other hand, respondent in effect concedes that the only difference between a free bridge and a toll bridge is in the manner of its operation or regulation. In this connection respondent says ''the vote was not carte blanche authority for the city *to operate* the bridge in a discretionary fashion to decide, at its whim alone, whether or not tolls were to be collected.'' (Italics ours.) Respondent concedes that Sec. 7574, supra, allowed appellant ''the option of building . . . a bridge *to be operated* as either a toll bridge or a free bridge,'' but contends that appellant having deemed it expedient to construct a free bridge, is forever bound thereby. (Italics ours.) In effect it is respondent's position that the voters of the city in approving the bond issues for the construction of a bridge, which the ordinances then provided should ''at all times be and forever remain free,'' assumed the burden and are conclusively bound to forever maintain and operate the bridge at the expense of the taxpayers of the city, regardless of future changes in traffic conditions or city finances. Respondent concedes that the city cannot legislate away its police powers, but insists that the police power of the city is not an issue in this case; and that there has been no showing that the collection of tolls would be a valid exercise of this

police power. Respondent says that the ordinance requiring the payment of tolls is a revenue measure.

Appellant did not obtain its authority to operate the bridge, and to regulate traffic thereon, from the vote of the people upon either of the bond issue propositions. It had such right under the constitution and laws of the state, and the sole proposition is whether it could or did, by the ordinances authorizing the calling of the bond issue elections, and by the expenditure of the funds derived from said bond issues, divest itself of such powers in so far as the bridge in question is concerned.

An inspection of the two ordinances, which authorized the calling of the special elections, shows that the form of ballot directed to be used contained no statement with reference to the use of the bridge after completion, either as a free or a toll bridge. The question submitted to the voters on June 12, 1906, concerned the increase of debt, to the amount mentioned, "for the construction and maintenance of a municipal bridge for public use." The question submitted to the voters on November 6, 1914, concerned the increase of debt "for the construction of the eastern approaches of the Municipal Bridge across the Mississippi River for public use." A subsequent provision, section 4, of each of the ordinances calling these elections, in fixing the use to which the proceeds of the proposed bond issues should be applied, repeated the terms of the authorized submission on the ballot and then added the words, "and which said bridge shall at all times be and forever remain a free bridge." Neither of the ordinances, which declared the results of the two special elections and provided for the issuance of the bonds, so authorized, made any reference to the clause, "and which said bridge shall at all times be and forever remain a free bridge." The voters expressed no choice between a free bridge and a toll bridge. The voters could only vote for or reject the bond issue propositions, as submitted.

The ordinance authorizing the holding of the special elections to determine whether bonds should be issued for the construction and completion of the bridge deal with two separate and distinct matters: First, the calling of a special election on the bond issue proposition and, second, a [454] determination of whether the proposed bridge, after its completion, should be operated by the city as a free or as a toll bridge. The question of whether the city would operate the proposed bridge as a free or a toll bridge had been determined by an exercise of legislative discretion before either bond issue proposition was voted upon. This legislative discretion, vested by statute in the Board of Aldermen to so operate the bridge, was not a matter for the determination of the voters, nor was it submitted to the voters. Our attention has been called to no statute authorizing the submission of such issue to the voters. Compare, State ex rel.

Landis v. Duval County (Fla.), 141 So. 173, where an express statute authorized the submission of such issue.

A determination of the terms and conditions upon which the proposed bridge could be used, after its completion, involved the legislative function and the exercise of police power. The proposed bridge was to be "for public use," and it is well settled that the power to collect tolls on such a bridge or highway is a part of the sovereign power of the state. State ex rel. Hines v. Scott County Macadamized Road Co., 207 Mo. 54, 78, 82, 105 S. W. 752; City of Pineville v. Pineville Bridge Co., 179 Ky. 375, 200 S. W. 659, 661; Ft. Smith Light & Traction Co. v. Williams, 149 Ark. 159, 231 S. W. 890, 895; 54 Am. Jur. 498, Turnpikes and Toll Roads, Sec. 11; 8 Am. Jur. 976, Bridges, Secs. 90, 91; 11 C. J. S. 1082, Bridges, Sec. 51 b. The power is similar to the power to regulate the use of streets and highways. Ex Parte Lerner, 281 Mo. 18, 218 S. W. 331, 333; City of Windsor v. Bast, (Mo. App.), 199 S. W. 722, 723. The Public Service Commission Act, conferring the power to regulate the rates of public utilities, is also based upon the police power. State on inf. Barker ex rel. Kansas City v. Kansas City Gas Co., 254 Mo. 515, 534, 163 S. W. 854.

The Act approved April 6, 1905 (Laws 1905, p. 94), now Sec. 7574 R. S. 1939, expressly granted to the appellant the legislative discretion to maintain, use and operate any such bridge as a toll or a free bridge. See, Ex Parte Williams, 345 Mo. 1121, 139 S. W. (2d) 485, 488. The legislative discretion, as exercised by the passage of ordinance No. 22,366, and by the passage of ordinance No. 27,662, could not and did not bind the city with reference to the exercise of the same powers in the passage of ordinance No. 42,701, which authorized the continuance of tolls, after the payment and discharge of relief bonds. The Board of Aldermen of 1906 and of 1914 could not forever abandon or surrender the powers lawfully conferred upon the city by its charter and the statutes, nor restrict the city in 1943 in the exercise of the powers theretofore granted to it. Thompson v. St. Louis, (Mo. Sup.), 253 S. W. 969, 972 (2); Union Cemetery Ass'n. v. Kansas City, 252 Mo. 466, 504, 161 S. W. 261; St. Louis Gunning Advertisement Co. v. St. Louis, 235 Mo. 99, 161, 137 S. W. 929; State v. The Hannibal & St. Joseph R. Co., 75 Mo. 208, 210; 37 Am. Jur. 901, Municipal Corps., Sec. 276; 11 Am. Jur., 983, Const. Law, Sec. 254; 43 C. J. 211, Sec. 213. It is immaterial, therefore, whether the bonds were voted upon with "the express stipulation" that the bridge be and remain a free bridge, because "the governing authority of a municipality is not permitted to abdicate through a contract any of its legislative powers and thereby preclude itself from meeting in a proper way the emergencies that may arise." Thompson v. St. Louis, supra, 253 S. W. 969, 972.

214.

.·The intention of the lawmakers in passing the ordinances is not controlling (see, Baum v. City of St. Louis, 343 Mo. 738, 123 S. W. (2d) 48, 50), nor is the intention and understanding of the voters in approving the bond issues. Jennings v. Clearwater School District, 65 Cal. App. 114, 223 Pac. 84. The city was without power to surrender the authority granted to it with reference to the collection of tolls on any such bridge that should be built, and the Board of Aldermen could not pass an irrevocable ordinance that no tolls should ever be collected on the proposed bridge. State v. Hamey, 168 Mo. 167, 183, 67 S. W. 620; State ex rel. McClellan v. Graves, 19 Md. 351, 373, 81 Am. Dec. 639. It is further immaterial that the bridge was operated for many years as a free bridge.

The power to repeal the ordinances providing for a free bridge was but an incident [455] to the power to enact them. Kansas City v. White, 69 Mo. 26; 37 Am. Jur. 834, Municipal Corps., Sec. 197. The members of the Board of Aldermen could not bind their successors in office with reference to the matter of tolls or no tolls. 50 Am. Jur. 62, Statutes, Sec. 45. In addition, the respondent had no vested right to have the ordinances remain in force and effect. Curators of Central College v. Rose, (Mo. Sup.), 182 S. W. (2d) 145, 149; St. Louis v. Christian Bros. College, 257 Mo. 541, 553, 165 S. W. 1057.

Whether the proposed bridge should be and remain forever a free bridge could not be determined in advance and irrevocably, because the matter was directly connected with the future welfare of the city and involved legislative discretion and the police power, as granted to the city. See, City of Cape Girardeau v. St. Louis-San Francisco R. Co., 305 Mo. 590, 267 S. W. 601, 602; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S. W. (2d) 195, 202.

In the case of Goszler v. The Corporation of Georgetown, 6 Wheat. (U. S.) 593, 5 L. Ed. 339, by an act of the Maryland legislature the corporation of Georgetown was given power to pass proper ordinances for the graduation of the streets of the city. By such an ordinance the corporation provided for the establishing of levels and the graduation of the streets and provided that such ''shall be forever thereafter considered as the true graduation of streets so graduated, and be binding upon this corporation, and all other persons whatever, and be forever thereafter regarded in making improvements upon said streets.'' It was held that the power given was a continuing power; that the levels established could be altered by subsequent ordinances; and that the corporation could not abridge its own legislative power.

The power and authority of the city in the exercise of its legislative discretion to determine whether or not tolls should be charged

for use of the bridge was not exhausted by the determination in 1906 and in 1914 that no tolls should be charged. Morrow v. Kansas City, 186 Mo. 675, 690, 85 S. W. 572; Mayor & City Council of Baltimore v. Baltimore Trust & Guarantee Co., 166 U. S. 673, 684, 41 L. Ed. 1160, 1164; 43 C. J. 269, Sec. 287. The operation of the bridge as a free bridge could continue only so long as the ordinances, providing therefor, remained in force and effect. Appellant possessed the full power and authority to pass ordinance No. 42,701, approved September 20, 1943, amending the prior ordinances and imposing a toll upon those using the bridge.

The judgment is reversed and the cause remanded with directions to set aside the order sustaining the motion to quash and discharging defendant, to overrule the motion to quash and proceed with the cause. It is so ordered. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.