GIERS IMPROVEMENT CORPORATION, a Corporation, Plaintiff (Appellant), v. INVESTMENT SERVICE, INCORPORATED, a Corporation, CITY OF UNIVERSITY CITY, MISSOURI, a Municipal Corporation, and WILLIAM A. RILEY PAVING & CONSTRUCTION COMPANY, INC., a Corporation, Defendants (Respondents).

THE ROOFING APPLICATION COMPANY, a Corporation, Plaintiff (Appellant), v. INVESTMENT SERVICE, INCORPORATED, a Corporation, CITY OF UNIVERSITY CITY, MISSOURI, a Municipal Corporation, and WILLIAM A. RILEY PAVING & CONSTRUCTION COMPANY, INC., a Corporation, Defendants (Respondents), Nos. 41855 and 41856—235 S. W. (2d) 355.

Division One, December 11, 1950.

Rehearing Denied, January 8, 1951.

*Herbert W. Ziercher* and *Edwin Tzinberg* for appellant.

*John A. Nolan* and *Arnold J. Willman* for respondent Investment Service, Inc.

506

*David Baron* for respondent William A. Riley Paving & Construction Company, Inc.

508

[357] VAN OSDOL, C.—Two actions in equity to cancel special tax bills in aggregate amount $22,023.40, to enjoin the enforcement thereof, and for a decree that the tax bills do not constitute liens on the described lands. The trial court sustained defendants' separate motions to dismiss on the stated ground the petitions failed to state claims upon which relief could be granted, and, plaintiffs having declined to further plead, the court ordered dismissals "with prejudice." Plaintiffs have appealed. The two causes have been consolidated herein for review.

Plaintiffs, owners of the described properties, in their petitions described the parties, plaintiffs and defendants, and pleaded the various ordinances establishing a sewer district (No. 89) within the City of University City and providing for the construction of a dual system of district sewers in the district; and for the advertisement and letting of the contract for the construction of the sewers, the acceptance of the improvement upon the completion of the construction, and the issuance of special tax bills in payment for the work.

Plaintiffs stated that the City of University City, of population in excess of 10,000, is a "constitutional charter city," the charter having been adopted pursuant to the authority provided in Section

19, Article VI of the Constitution of Missouri of 1945, Mo. R. S. A. Const. Art. VI, § 19.; and that "no enabling legislation has been passed by the Legislature of Missouri implementing the 1945 Constitution of Missouri permitting constitutional charter cities to establish sewer districts and to issue special tax bills for sewer purposes and that the formation of Sewer District No. 89 and the aforesaid special tax bills are null and void."

Plaintiffs further alleged that the properties of plaintiffs are bounded on the west by the west corporate line of University City, are west of Woodson Road in the City, and are of higher elevation than the remaining property lying to the eastward in the district; (plaintiff, Giers Improvement Corporation, alleged that the southern two thirds of its property lies contiguous to, and in the same watershed as the formerly established Sewer District No. 74; that the sewers in Sewer District No. 74 are ample for disposal of all drainage water or other sewage emanating from such two-thirds portion of such plaintiff's property; and that none of the property of that plaintiff is improved); that the property of plaintiffs "was fraudulently included" in District 89 so as to provide additional revenue for the construction of sewers east of Woodson Road, and no sewer of any character was constructed west of said road; the plaintiffs further (and severally) alleged "said special tax is illegal, void and fraudulent for the reasons hereinabove stated, and that in addition thereto the same is confiscatory in that the 'purported improvement' for which said tax bills were issued does not increase the value of the property of plaintiff, and that same is equal to or greater in the aggregate than the value of plaintiff's property within said Sewer District. That if said tax bills are adjudicated to be valid, then the property of plaintiff will be confiscated without due process of law and without the payment of consideration therefor to the plaintiff"; and that plaintiffs and each of them "verily believes and alleges the fact to be that their aforesaid property was illegally and fraudulently included within the confines of the aforesaid Sewer District by the City of University City, Missouri, with the intent and for the purpose of providing additional and necessary revenue and with the full knowledge that plaintiff's property would thereby be appropriated for such purpose without consideration to plaintiff."

In the pleaded Ordinance No. 3007 (accepting the completed improvement in Sewer District No. 89, levying a special assessment in payment, and authorizing the issuance of special tax bills therefor) it is recited that a public hearing was held April 7, 1948 (and continued to April 20th), and that a notice of the hearing had been theretofore published on March 19th, all pursuant to the directions of the original resolution of March 12th.

[358] We believe plaintiffs-appellants are mistaken in their pleadings, and in their contentions herein upon appeal that the City

of University City had no power to establish the sewer district, construct a sewer, and issue tax bills in payment for the improvement. If we are right in this regard, the further contention of plaintiffs-appellants (that the entire proceeding is void and subject to collateral attack because the City had not been so empowered) must fail.

As alleged in plaintiffs' petitions the City of University City is a charter city, having framed and adopted a charter by vote of the people of the City, February 4, 1947, under the authority granted by Section 19 of Article VI of the Constitution of 1945, supra. The Section 19 had as its source Section 16, Article IX of the Constitution of Missouri of 1875, Mo. R. S. A. Const. Art. IX, § 16, and differs therefrom in the prescribed requisite minimum number of inhabitants of cities which may frame and adopt charters—"more than one hundred thousand inhabitants," Section 16, Article IX, Constitution of 1875, supra; "more than 10,000 inhabitants," Section 19, Article VI, Constitution of 1945, supra.

As was true of the city which had framed and adopted a charter under the provisions of Section 16, Article IX, Constitution of 1875, supra, so it must be true of the City of University City which has framed and adopted a charter pursuant to Section 19, Article VI of the Constitution of 1945, supra. The charter adopted presents a complete system of local self-government. Plaintiffs-appellants are correct in urging that the power to tax is a governmental function inherent in the State (more precisely stated, "inherent in the sovereign people of the State"), exercised by the legislature subject to constitutional limitation. But there are matters governmental in character, including taxation, over which a city may exercise authority delegated to it. In the case of a city organized under general law the delegation is *by statute*. A city, the people of which have framed and adopted a charter under direct constitutional authority, may exercise such powers of local self-government, including taxation, as the people of the city have delegated to it *by charter*, subject to constitutional limitation. This is because the sovereign people of the State by their Constitution have set over, transferred or granted to the people of the city a part of the State legislative power. The part so granted is the legislative power to frame and adopt a charter for local self-government. Hence it is said charter provisions ("consistent with and subject to the Constitution and laws of the state") have the force and effect of enactments of the legislature. McGhee v. Walsh, 249 Mo. 266, 155 S. W. 445. See also Kansas City v. Frogge, 352 Mo. 233, 176 S. W. 2d 498; Troost Ave. Cemetery Co. v. Kansas City, 348 Mo. 561, 154 S. W. 2d 90; Kansas City v. J. I. Case Threshing Machine Co., 337 Mo. 913, 87 S. W. 2d 195; Mullins v. Kansas City, 268 Mo. 444, 188 S. W. 193. In framing and adopting a charter, what did the people of the City of University City say the City could do?

Upon examination of Article XI of the Charter of the City of University City, of which charter we take judicial notice (Fleshner v. Kansas City, 348 Mo. 978, 156 S. W. 2d 706), we observe that the City has been empowered to make public improvements, including sewers. It is provided that payment for the improvements may be made, in whole or in part, by special assessments on benefited property. Proceedings for public improvements are commenced by resolution of the council declaring the necessity of such improvements, the nature thereof and the method of payment therefor. When the improvements are to be paid for in special tax bills, the resolution must state the proposed method of making assessments to pay therefor. District sewers may be constructed in established sewer districts. If the cost of construction is to be paid for by assessments or tax bills, the entire amount of the assessment is to be levied "ratably by area" upon all the lots or parcels of ground in the district. Upon the adoption of the resolution, the council is required to fix a time for a public hearing at which all persons interested may be heard. After the hearing the council may [359] determine that it is or is not in the public interest that such improvement or any part thereof be made.

(It is not contended by plaintiffs-appellants that the charter power granted in Article XI is inconsistent with the Constitution or laws of the State, nor that the council did not follow the procedure, prescribed in the Article, thoughout the proceedings for the improvement in Sewer District No. 89.)

It was alleged that the value of plaintiffs' properties is not increased; that the tax assessed exceeds the value of their properties; and that the properties were "fraudulently" included within Sewer District No. 89 by the City with the intent and for the purpose of providing additional and necessary revenue for the construction of sewers east of Woodson Road and with knowledge that plaintiffs' properties would be appropriated without consideration to plaintiffs.

The inclusion in good faith of plaintiffs' properties for the purpose of raising additional and necessary revenue for the construction of the sewers was not fraud on the part of the city officers, even though such sewers were east of Woodson Road. If they honestly believed that plaintiffs' properties would be benefited by the improvement, the city officials did not act fraudulently. (Plaintiffs did not allege that the defendant contractor was a party to or had knowledge of the alleged fraud. Compare Jennings Heights Land & Imp. Co. v. St. Louis, 257 Mo. 291, 165 S. W. 741.) However, in the "points relied on" and in the argument in their briefs, plaintiffs-appellants do not urge the allegation of actual fraud as a basis for their assignment of error of the trial court in dismissing the petitions. We infer plaintiffs-appellants do not rely upon and

have abandoned the allegation of fraud as upholding the sufficiency of their petitions. Examine Supreme Court Rule 1.08(a), and compare Johnson v. Fogertey Building Co., Mo. App., 194 S. W. 2d 924. Herein, plaintiffs-appellants urge the trial court "erred in failing to rule that the matters of whether appellant was taxed in a confiscatory manner and disproportionately in relation to the benefits it derived and whether it suffered inequities constituted questions of fact." Herein, the contentions of plaintiffs-appellants amount to no more than assertions that the inclusion of their properties in Sewer District No. 89 was inequitable, unreasonable and oppressive. Concerning these matters no timely question was raised by plaintiffs. McGhee v. Walsh, supra; Heman v. Schulte, 166 Mo, 409, 66 S. W. 163.

Now, the public necessity of the improvement, the inclusion of properties in the district, and the benefits to the included properties were legislative questions of fact to be determined by the council; and, the questions having been determined, the determination was conclusive, absent fraud or oppression, and not subject to review by the courts. Badger Lumber Co. v. Mullins, 310 Mo. 602, 275 S. W. 957; McGhee v. Walsh, supra; Prior v. Buehler & Cooney Const. Co., 170 Mo. 439, 71 S. W. 205. Inasmuch as there was notice, although but constructive, to plaintiffs of the public hearing and an opportunity to be heard before the council (the tribunal having the duty of ascertaining the facts leading up to the assessment procedure) there was also present due process of law required by constitutional provision. Wiget v. City of St. Louis, 337 Mo. 799, 85 S. W. 2d 1038; McGhee v. Walsh, supra; St. Louis Malleable Casting Co. v. George C. Prendergast Const. Co., 288 Mo. 197, 231 S. W. 989; Meier v. St. Louis, 180 Mo. 391, 79 S. W. 955; Prior v. Buehler & Cooney Const. Co., supra.

It seems plaintiffs did not appear at the public hearing and seek to be heard, although the purpose of the hearing was to entertain and determine objections with respect to the improvement and to afford the property owners of the district an opportunity to show, if they could, that their properties were improperly included in the district or would not be benefited; or that their properties were about to be made to [360] bear an unjust burden of the special tax being assessed; any of which objections could then have been eliminated before the expense of constructing the improvement had been incurred by a contractor in doing the work. But, on April 19-20, 1949, after the conclusion of the whole of the proceedings and after the work of construction had been completed and tax bills issued to the contractor who must have done the work reposing faith in the unchallenged record of the regular proceedings, plaintiffs instituted the instant actions seeking to invoke the powers of a

court of equity in their behalf. Again see Jennings Heights Land & Imp. Co. v. St. Louis, supra. Surely, it seems to us, they should have availed themselves of the opportunity to appear at the hearing before the city council held pursuant to the provisions of the City's charter. And, not having done so, they should be held by a court of equity to be estopped to now assert the objections that the improvement was of no benefit to their properties, or that their properties were improperly included in the district, or that the special tax was disproportionately and inequitably assessed, which bases of objections, if valid, plaintiffs might have had remedied by appearances and the introduction of evidence in support thereof at the public hearing before the city council. St. Louis Malleable Casting Co. v. George C. Prendergast Const. Co., supra; Jennings Heights Land & Imp. Co. v. St. Louis, supra; McGhee v. Walsh, supra; Empire Securities Co. v. Matthews, 179 Cal. 239, 176 Pac. 160; and other cases cited in the Annotation, 9 A. L. R. 634, at pages 706-712. See also Wiget v. City of St. Louis, supra; and cases cited in the Annotation, 100 A. L. R. 1292, at pages 1297-1298.

The orders of dismissal should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.