**CITY OF RAYTOWN, Missouri, Respondent,**

**v.**

**Jess F. KEMP and Elma Kemp, Appellants.**

In the Matter of the Petition of the City of Raytown, Missouri, for a Pro Forma Decree Authorizing the Issuance and Adjudicating the Validity of $935,000 Principal Amount of Sewerage System Bonds, Series 1961, of Said City.

No. 48799.

Supreme Court of Missouri,

En Banc.

Sept. 11, 1961.

As Modified on Court's Own Motion Sept. 25, 1961.

John C. Mills, III, Kansas City, for appellants.

J. H. Greene, Jr., Raytown, Robert B. Fizzell, Robert B. Fizzell, Jr., Norman E. Gaar, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for respondent.

STORCKMAN, Judge.

This is a proceeding by the City of Raytown, Missouri, a municipal corporation, filed in the Circuit Court of Jackson County pursuant to the provisions of §§ 108.310 to 108.350, RSMo 1959, V.A.M.S. seeking to authorize the issuance and to adjudicate the validity of Sewerage System Bonds in the principal amount of $935,000. Jess F. Kemp and Elma Kemp filed their intervening petition whereby they sought to have the bonds declared invalid, illegal and void on constitutional and other grounds. The trial court found the issues in favor of the petitioner, City of Raytown, and against the intervenors, and adjudged and decreed that the City was authorized to issue the bonds and that the bonds when issued would constitute general obligations of the City payable from ad valorem taxes. The intervenors' motion for new trial was overruled and they appealed.

Since the questions presented involve the construction of Art. VI, § 26(d) of the Constitution of Missouri 1945, V.A.M.S., and the due process provisions of the Fourteenth Amendment to the Constitution of the United States and Art. I, § 10 of the Constitution of Missouri 1945, this court has appellate jurisdiction. Art. V, § 3, Constitution of Missouri 1945; State ex rel. Askew v. Kopp, Mo., 330 S.W.2d 882, 886 [1]; Moots v. City of Trenton, 358 Mo. 273, 214 S.W.2d 31, 32 [1].

There is no dispute as to the facts. The City of Raytown is a municipal corporation of the fourth class having a population according to the 1960 census of 17,083. In 1957 the voters of Raytown authorized and the City has since issued, sold and delivered three series of bonds for the purpose of constructing, extending and improving the City's sanitary sewerage system. These improvements were of three types: (1) The construction of main trunk line sewers, (2) the construction of lateral sewers, and (3) the construction of sewerage disposal works. The area of the City having doubled by reason of annexations, the voters in 1960 authorized the issuance by the City of three additional series of sanitary sewerage system bonds. Proposition No. 1 was to issue general obligation bonds to the amount of $600,000 for the purpose of acquiring right of ways, constructing, extending and improving the sanitary sewerage system of the City. Proposition No. 2 was to issue general obligation bonds of the City to the amount of $935,000 for the purpose of acquiring rights of ways, constructing, extending and improving the sanitary sewerage system of the City by constructing lateral sewers. Proposition No. 3 was to issue sewerage system revenue bonds to the amount of $665,000 for the purpose of extending and improving the sanitary sewerage system of the City.

The bonds, the validity of which are here in question, are those described by Proposition No. 2 which as stated in Ordinance No. 644 of the City of Raytown is as follows:

"Proposition to issue the general obligation bonds of the City of Raytown, Missouri, to the amount of $935,000 for the purpose of acquiring rights-of-way, constructing, extending and improving the sanitary sewerage system of said City by constructing lateral sewers, the governing body of said City to provide in due course that all of the cost of any such improvements shall be levied and assessed on property benefited by such improvements and that the City shall collect any special assessments so levied and use the same to reimburse the City for the amount paid or to be paid by it on the general obligation bonds of the City issued for such improvements.

"The authorization of said bonds will authorize the levy and collection of an annual tax in addition to the other taxes provided for by law on all tangible taxable property in said City sufficient to pay the interest and principal of said bonds as they fall due and to retire the same within twenty years from the date thereof."

The first paragraph of the foregoing quotation appeared on the ballot at the special bond election in describing the particular proposition submitted to the electorate. The City bases its right to issue the bonds in question on § 95.125, RSMo 1959, V.A.M.S.

The intervenors' first contention is that § 95.125 is unconstitutional and void in that it deprives landowners in the City of Raytown of their property without due process of law in violation of Art. I, § 10, of the Constitution of Missouri, and the Fourteenth Amendment to the Constitution of the United States. They specifically assert that the statute is vague, indefinite and incomplete in that it sets no standards, fixes no procedure for the City to follow "in levying special assessments to pay the bonds" and fails to provide any notice to property owners proposed to be assessed or for any hearing on a proposed assessment.

Section 95.125, insofar as here pertinent, provides: "Any city, whether organized under the general laws of this state or by special charter or by constitutional charter, by a vote of two-thirds of the qualified electors thereof voting thereon, may become indebted, not exceeding in the aggregate an additional ten per cent of the value of the taxable tangible property therein as shown by the last completed assessment for state and county purposes, for the purpose of * * * acquiring right of ways, constructing, extending and improving sani-

tary or storm sewer systems; provided, that the governing body of such city may provide that any portion or all of the cost of any such improvement be levied and assessed by such governing body on property benefited by such improvement, and, when so provided, such city shall collect any special assessments so levied and shall use the same to reimburse the city for the amount paid or to be paid by it on the bonds of the city issued for such improvement."

This statute is based upon Art. VI, § 26 (d) of the Constitution of Missouri 1945. The language of the statute and the constitutional provision are almost identical. There is no difference in substance or legal effect.

The intervenors cite a number of cases dealing with the fundamentals of due process of law as related to the assessment of benefits for public improvements. Generally these authorities are exemplified by this statement from 14 McQuillin on Municipal Corporations, 3rd Ed., § 38.106, p. 253: " 'It has always been the general rule in this country, in every system of assessment and taxation, to give the person to be assessed an opportunity to be heard at some stage of the proceeding. That "due process of law" requires this has been uniformly recognized.' " Among Missouri cases urged by the intervenors in support of their contention are Giers Improvement Corp. v. Investment Service, Inc., 361 Mo. 504, 235 S.W.2d 355; City of St. Louis v. Senter Commission Co., 336 Mo. 1209, 84 S.W.2d 133; State ex rel. Webster Groves Sanitary Sewer Dist. v. Smith, 342 Mo. 365, 115 S.W.2d 816; and City of St. Louis v. Bell Place Realty Co., 259 Mo. 126, 168 S.W. 721. The City does not dispute that the levy of special assessments to pay the cost of local improvements must comply with the requirements of due process of law but urges that the validity of the procedure for determining benefits and levying and collecting assessments is not presently at issue, that the City is authorized to provide by ordinance proper procedures for assessing benefits and that it cannot be anticipated that the City will not provide a procedure in keeping with the requirements of due process of law. So far as the record shows, benefit districts have not been established and no assessments have been made. The only question before us at the present time is whether § 95.125 is invalid in that it does not contain detailed procedures for assessing benefits in a manner consistent with due process of law.

■■ The right to levy taxes is vested primarily in the state. The power to tax for local or municipal purposes may be, and generally is, delegated to and exercised by the legislative body of the municipality. The authority to tax must be expressly granted or necessarily incident to the powers conferred upon the municipality and in case of doubt the power to tax is denied. Kansas City Grading Co. v. Holden, 107 Mo. 305, 17 S.W. 798, 799; Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415, 416; Moots v. City of Trenton, 358 Mo. 273, 214 S.W.2d 31, 33; Giers Improvement Corp. v. Investment Service, Inc., 361 Mo. 504, 235 S.W.2d 355, 358; Holland Furnace Co. v. City of Chaffee, Mo.App., 279 S.W.2d 63, 68. The Giers case involved an attack upon the validity of special tax bills issued by a city for sewer purposes. The court upheld the assessment and, inter alia, made this ruling, 235 S.W.2d 358[1]: "But there are matters governmental in character, including taxation, over which a city may exercise authority delegated to it. In the case of a city organized under general law the delegation is *by statute*."

■ The authority of a city to incur the indebtedness provided for by § 95.125 carries with it the mandatory duty to collect a tax sufficient to pay the principal and interest of the indebtedness as they become due. Art. VI, § 26(f), Constitution of Missouri; § 95.135, RSMo 1959, V.A.M.S.; State ex rel. City of Jefferson v. Hackmann, 287 Mo. 156, 229 S.W. 1082, 1085[5, 6].

■ In addition to granting a city the right to incur indebtedness for the con-

struction of streets and sewers and to levy an additional ad valorem tax to pay the bonds, § 95.125 authorizes the city to reimburse itself by means of special assessments levied on property benefited by such improvements. It is not essential to the validity of § 95.125 that its terms should provide for notice and opportunity for property owners to be heard with respect to the special assessments or even to refer to the necessity therefor because such matters may be provided by ordinances consistent with existing statutes and constitutional limitations. In Paulsen v. City of Portland, 149 U.S. 30, 38, 13 S.Ct. 750, 753, 37 L.Ed. 637, a similar complaint was directed against a charter provision of the city and the court held: "The city is a miniature state; the council is its legislature; the charter is its constitution; and it is enough if, in that, the power is granted in general terms, for, when granted, it must necessarily be exercised subject to all limitations imposed by constitutional provisions, and the power to prescribe the mode of its exercise is, except as restricted, subject to the legislative discretion of the council." The Paulsen case has been cited and followed in Missouri decisions. See City of St. Louis v. Brinckwirth, 204 Mo. 280, 102 S.W. 1091, 1098; Wiget v. City of St. Louis, 337 Mo. 799, 85 S.W.2d 1038, 1042, 100 A.L.R. 1284; and State ex rel. Audrain County v. City of Mexico, 355 Mo. 612, 197 S.W.2d 301, 303.

To the same effect is this statement from Dodds v. Kansas City, 347 Mo. 1193, 152 S.W.2d 128, 131[8]: "* * * where there is an express grant to a city without the method or details of exercising such power prescribed, the City Council has authority to exercise the power granted it in any reasonable and proper manner." See also State ex rel. City of Fulton v. Smith, 355 Mo. 27, 194 S.W.2d 302; City of Springfield v. Monday, 353 Mo. 981, 185 S.W.2d 788; City of Liberty v. Jones, Mo., 296 S.W.2d 117; and Home Telephone and Telegraph Co. v. City of Los Angeles, 211 U.S. 265, 29 S.Ct. 50, 53 L.Ed. 176.

■ Any deficiency in the procedures provided by law for levying and collecting special assessments may be complemented by city ordinances. It follows that § 95.-125 is not unconstitutional as being in violation of the due process of law provisions of the state and federal constitutions. The assignment of error is denied.

■■ Next the intervenors urge that the submission of Bond Proposition No. 2 was improper and illegal because there was added to the proposal to issue general obligation bonds the requirement that the governing body of the City should provide in due course that all the cost of the improvements should be levied and assessed on property benefited by the improvements. The first ground of objection is that "the proposition is in the nature of a double proposition submitted in an effort to attract the votes of all electors". Three cases are cited in support of this contention, all of which recognize the rule that "two separate and distinct propositions cannot be combined and submitted jointly". State ex rel. Pike County v. Gordon, 268 Mo. 321, 188 S.W. 88, condemned the joint submission of a proposal to issue bonds to build two courthouses, one at Bowling Green and another at Louisiana. State ex inf. Barrett ex rel. Callaghan v. Maitland, 296 Mo. 338, 246 S.W. 267, held invalid as a multiple submission a proposed amendment of the charter of Kansas City designed (1) to create a water commission, (2) to create a fire department, and (3) to name the respondents as commissioners of the proposed water commission. State ex rel. Board of Fund Commissioners v. Holman, Mo., 296 S.W.2d 482, recognized the rule but held that the proposal to issue $75,000,000 in bonds for the construction and repair of state buildings was a single submission. None of these cases support the intervenors' contention that Proposition No. 2 is a double submission. Neither is Proposition No. 2 in conflict with other sections of Chapter 95, RSMo 1959, V.A.M.S., nor with § 26(d) of Art. VI of the Constitution.

Until the adoption of the 1945 Constitution, it was necessary to finance local sewer and street improvements either by general obligation bonds or by the issuance of special tax bills. There were drawbacks to each of these two methods but a combination of the two was not authorized. Section 26(d) of Art. VI of the 1945 Constitution combines desirable features of these two methods by lending the general credit of a city to the financing of street and sewer improvements with the ultimate cost being borne by those locally benefited. The flexible nature of existing provisions and the opportunity they afford to distribute equitably, and yet in a practical way, the cost of various public improvements is demonstrated by the three propositions submitted in this case. No. 1 was for general obligation bonds to be issued primarily to finance the cost of main trunk line sewers. No. 3 was for revenue bonds payable solely from revenue derived from the operation of the sanitary sewerage system. The one here in question, No. 2, was for general obligation bonds to finance the cost of lateral sewers with the provision, however, that the City would ultimately be reimbursed from special assessments against the property benefited.

We are not called on to decide if it was necessary to express in Proposition No. 2 the fact that it was the intent and purpose of the City Council to reimburse the City ultimately from special assessments and we do not do so. We do hold that Proposition No. 2 follows substantially the language of § 95.125 and the inclusion of the information that the City would be reimbursed from special assessments did not have the effect of combining two separate and distinct propositions in a single submission; hence, the proposition was not the submission of unrelated matters and it was not misleading or in fraud of the voters. State ex rel. Becker v. Smith, 335 Mo. 1046, 75 S.W.2d 574; Kellams v. Compton, Mo., 206 S.W.2d 498, 4 A.L.R.2d 612; State ex rel. Board of Fund Commissions v. Holman, Mo., 296 S.W.2d 482.

■ The intervenors urge also that the inclusion of this information regarding reimbursement constituted an illegal delegation of the powers of the City Council to the voters, thereby rendering the bond issue invalid. They rely upon City of St. Louis v. Cavanaugh, 357 Mo. 204, 207 S.W.2d 449, in which it was held that the Board of Aldermen of the city was not divested of its legislative power to charge tolls on a bridge owned by the city notwithstanding the fact that the original ordinances submitting bond issues to the voters recited that the bridge should be and forever remain a free bridge. The case cited does not reach the question of the validity of the bond issue since the defendant was being prosecuted for violating the later ordinance by refusing to pay toll. In the present case the City Council of Raytown has made the preliminary determination that the City will be reimbursed by the assessment of benefits which fact was so stated in Proposition No. 2 for the information of the voters. The inclusion of this information in the proposition was not an attempt to delegate the Council's legislative power to the voters.

■ Next the intervenors urge that the bonds are unauthorized and invalid because they purport to be general obligations of the City payable from ad valorem taxes but were submitted to the voters under Proposition No. 2 as bonds payable out of special assessments. No authorities are cited in support of this contention. Clearly it is untenable. Proposition No. 2 recites in two places that the bonds are "general obligation bonds of the City". The proposition plainly states that the special assessments shall be collected and used by the City "to reimburse" itself for the amount paid or to be paid by it on the bonds. Ordinance 644 calling a special election and the published notice of the election both stated that the approval of Proposition No. 2 would authorize the levy and collection of an additional annual tax on all tangible taxable property in the City sufficient to pay the interest and principal of the bonds and to retire them in twenty years. It was not necessary that the

entire ordinance be set out on the ballot. It is sufficient that enough be stated to show its character and purpose. State on inf. of Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656, 661 [10, 11].

Ordinance 773 authorized the issuance of the bonds and approved a bond form. The bond is a general obligation which recites that the City "is held and firmly bound by these presents, and the full faith, credit and resources of said City are hereby irrevocably pledged for the prompt payment" of the bonds. There is no mention of special assessments. This is consistent with the submission. Proposition No. 2 did not, as the intervenors assert, constitute the submission of a proposition "to issue bonds of the City payable from special assessments."

The intervenors next contend that the bonds are invalid because the form of ballot used did not conform to that prescribed by § 95.150, RSMo 1959, V.A.M.S. Again the intervenors cite no authority in support of their contention. The form of ballot set out in § 95.150 has blank spaces for the insertion of the name of the city, the amount of the bond issue, and its purpose. The intervenors' complaint is that the proposition submitted was qualified "by telling the voters that in due course the governing body of the city will levy and assess the cost of the improvement on property benefited." This they say constitutes a material change in the form prescribed by the statute. First it should be noted that the statute provides that the ballot shall be *substantially* in the form set forth. A statutory provision of this kind is directory rather than mandatory, and minor differences will not invalidate a bond election. Ginger v. Halferty, Mo., 193 S.W.2d 503, 505 [1]; State ex rel. City of Memphis v. Hackman, 273 Mo. 670, 202 S.W. 7, 14 [10]. We have previously held that the inclusion of the information as to who would ultimately bear the cost of the improvements was not improper and was not misleading. The ballot was in substantial compliance with § 95.150

and the addition of the material complained of did not invalidate the bond issue.

In the final point of their brief, the intervenors urge that the bond election and the bonds authorized by the voters are invalid for four additional reasons. These are the same or at most a slight variation of questions previously determined. First the intervenors say that Proposition No. 2 deprived the voters of their right to vote for or against the issuance of general obligation bonds independently of the condition or requirement regarding the assessment of property benefited by the improvements. The question submitted to the voters by Proposition No. 2 is a method of financing public improvements expressly authorized by Art. VI, § 26(d) of the Constitution and § 95.125 of our statutes. This subject matter is necessarily involved in the question presented by intervenors' point 2 and denied. Nothing new is presented and we adhere to our previous ruling.

Secondly the intervenors say that the submission of Proposition No. 2 illegally deprives the City's governing body now and in the future of their right to choose and select the particular method of levying, assessing and collecting taxes to pay the cost of the proposed sewer improvements. Again the Cavanaugh case, 357 Mo. 204, 207 S.W.2d 449, is put forward as it was when practically the identical question was presented and ruled by us under point 2. The question actually urged is whether a City Council could in the future reverse the action taken under Ordinances 644 and 773 and provide instead that the City be not reimbursed, or be reimbursed for something less than the full amount of its outlay. The relation involved in this contention is the one between the City and its taxpayers or the assessed property owners. It does not involve the contractual relations between the City and the holders of its general obligation bonds. The issue thus being pressed cannot properly be before us unless and until the Council changes its mind about assessing benefits. It does not affect

the validity of the bonds but only the City's right to reimbursement. The contention is denied.

The third part of this point is that Proposition No. 2 as submitted deprives the governing body of the City of its right and obligation to provide for the collection of an annual tax to pay interest and principal of the bonds as required by Art. VI, § 26(f) of the Constitution and § 95.135 of the statutes. This too has been previously treated. We reiterate that the City not only has the right but the legal obligation to levy and collect the additional annual tax for the payment of the interest and principal of these general obligation bonds. Nothing in Proposition No. 2 interfered with this mandatory duty which in fact arose out of the voters' approval of the proposal.

The fourth subdivision of this point is that Proposition No. 2 as submitted illegally deprives the present and future governing bodies of the City of their discretionary power to determine that none, or only a part, of the cost of the improvements shall be paid by special assessments thereby depriving or threatening to deprive the intervenors of their property without due process of law. Here again the intervenors overlook the fact that special assessments are not the primary source for the funds for the payment of the cost for the improvements. Special assessments are to be the source of funds to reimburse the City. The intervenors cite no cases and give no reasons to distinguish this from the constitutional questions previously decided. We cannot say that there will or will not be a denial of due process in any future legislative determination of the City Council. We can only say that on the record presented there has been no denial of due process of law under either the state or federal constitutions.

We have considered and determined adversely to the intervenors, the appellants herein, all questions presented on this appeal. Accordingly the judgment is affirmed.

All concur.